## People of the State of Illinois, Plaintiff-Appellee, v. Herman Burks, Defendant-Appellant.

### Gen. No. 51,918.

First District, Third Division.

January 16, 1969.

113

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert B. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Herman Burks was found guilty of rape by a jury and was sentenced to the penitentiary for a term of not less than eight years and not more than thirteen years.

He contends that his conviction should be reversed or in the alternative, reversed and remanded, because his identification was insufficient to sustain a finding of guilty; the trial court permitted hearsay testimony concerning his identification; the court restricted the cross-examination of a State's witness, and the State turned over police reports to his counsel in the presence of the jury.

The prosecutrix, a housewife, lived in a large, courtyard-type apartment building in Chicago. At approximately 2:30 in the afternoon of April 4, 1966, she left her apartment to go to a grocery store. When she got to the front of the building, she noticed that she had forgotten her purse and went back to get it. As she approached the entrance of the building, she saw a man, whom she later identified as the defendant, standing nearby. She hurried past him and entered the hallway, which was

114

fifteen feet long. He followed her into the building, through the hallway and to the stairway which led to her second-floor apartment. When they reached the stairs she stopped to let him pass but he placed a gun in her back, cautioned her not to scream and told her to lie down and remove her underclothing. He then loosened the light bulb overhead and raped her.

Footsteps were heard coming down the stairs, and he fled after warning that he would kill her if she said anything. The footsteps were those of her sister. She whispered to her sister to go back and they went upstairs and reported the rape to the police.

The next morning as the prosecutrix looked out the window she saw her assailant walking through the alley. She immediately telephoned the police. They came to her home but arrived too late to catch the man. When they did not return with him she went out herself and saw him sitting in a liquor store. She rushed back home and again telephoned the police who came upon her call. She got in their car and was being driven toward the liquor store when she saw the man coming down the street. She pointed him out and the officers arrested him. One of the officers testified that when he asked Burks to come to the car, he replied, "I did not do anything to that woman." The officer said, "nobody accused you of doing anything." Burks denied making the statement.

Burks was asked at the police station where he was about 2:30 in the afternoon on the day before. One interviewing officer testified that he said he had worked all day at a glass company, but he could not remember its address or the name of his foreman. A few minutes later he stated he had been working for a different glass company but did not answer when asked the location of that company. Another officer who interrogated Burks testified that he first stated he had worked for a glass company on April 4th, but then said he was unem-

ployed and had spent the day baby-sitting at the home of his common-law wife.

At his trial Burks denied the rape and denied telling the officers that he was working for a glass company or was baby-sitting. He testified that on the day of the crime he was in the apartment of a friend who lived in the same building as the prosecutrix; he said that he was there, except for short periods of time, from 10:00 a. m. to 6:00 p. m., drinking beer and playing records. He said that when he was arrested the prosecutrix did not think he was the right man but said that her assailant had a jacket and hat like his.

The friend corroborated Burks' testimony, and Burks' mother testified that she and another woman talked to the prosecutrix the day her son was arrested and she said she was not sure he was the man who raped her. The prosecutrix denied making such a statement.

In support of his contention that the identification was insufficient to sustain a finding of guilty, the defendant points out that the conviction rests upon the uncorroborated testimony of the prosecutrix; she could not have had a good look at the man who attacked her because she said she rushed past him when she reentered the building and she was assaulted in the darkest part of the stairwell; she did not smell alcohol on the rapist whereas Burks had been drinking all that day, and his explanation of his whereabouts was uncontradicted.

 The testimony of a rape victim, even though uncorroborated, is sufficient to sustain a conviction if it is clear and convincing. People v. Mack, 25 Ill2d 416, 185 NE2d 154 (1962); People v. Scott, 82 Ill App2d 109, 227 NE2d 72 (1967). The testimony of the prosecutrix was clear and it was convincing. She first saw the defendant in daylight, looked at him again when she paused to let him pass and saw him throughout the rape. Although she testified that he unscrewed a light bulb and that the attack took place in the darkest part of the hallway, she

116

also said it was never too dark to see. There were two lights in the hallway—one of them just over the stairs; there were two doors in the hallway—both were glass; there were two windows—one in the corner of the hallway opposite the stairway and the other in the stairwell about three stairs above the ground floor. She saw the features of the defendant so well that she recognized him at once when she saw him the next day although she was at a window in her apartment and he was some distance away in an alley. The police did not have to bring suspects to her or have her view them in a lineup; she led the police to the defendant. The argument that her identification is weakened because she did not smell alcohol on the defendant presupposes that he was telling the truth about having been drinking the day of the rape. The jury did not have to believe his testimony in this respect anymore than it had to believe his alibi. His credibility and that of his witnesses was for the determination of the jury. It is the province of the jury to determine the facts and which witnesses are telling the truth. The jury chose to believe the prosecutrix; her testimony was convincing and unshaken and the finding of the jury will not be overturned.

■■ Nor do the alleged trial errors warrant remandment of the case for a new trial. The first of these is said to have occurred during the testimony of one of the arresting officers. He testified that as they were driving down the street toward the liquor store the prosecutrix exclaimed, upon seeing the defendant, "That is the man right there." It is argued that this statement was hearsay and, as such, inadmissible. No objection was made to the officer's testimony, but even if there had been there would have been no error in overruling the objection. The police and the victim were searching for the rapist and the victim's exclamation upon unexpectedly seeing him on the street was spontaneous—there was no time for contrived fabrication. Cf.: People v.

117

Poland, 22 Ill2d 175, 174 NE2d 804 (1961); Lander v. People, 104 Ill 248 (1892). More important, the prosecutrix had said the very same thing herself when she was on the witness stand. She testified that she had pointed out the defendant to the officers when they came upon him. She confronted the defendant in court and she was extensively cross-examined. The defendant thus had the opportunity to test her declaration, and its repetition by the police officer, under these circumstances, did not violate the hearsay rule which is designed not to exclude all out-of-court statements but only those which the party against whom they are offered has no opportunity to test by cross-examination. People v. Carpenter, 28 Ill2d 116, 190 NE2d 738 (1963).

■ The complaint that the trial court unduly restricted the cross-examination of one of the arresting officers is without merit. The defendant's attorney questioned the officer about his having known the defendant before his arrest and asked whether he had suggested the defendant's description to the prosecutrix during their conversation just prior to his apprehension. Objections to these questions were properly sustained. The cross-examination was based on the false premise that the officer may have influenced the prosecutrix' identification of the defendant. The fact of the matter was that the police had nothing to do with her identification. She saw her assailant two times after the rape and called the police each time to tell them that she had seen him. She identified him before the police apprehended him as well as afterwards. It was she who guided them to him. The defense counsel's questions on this subject were irrelevant. The defendant was given full opportunity to cross-examine all witnesses and in no instance was the examination improperly restricted.

■ The defendant's final contention is that it was reversible error for the prosecutor to turn over police reports to his counsel in the presence of the jury. As

part of the State's rebuttal, a police officer testified that the defendant, when interrogated after his arrest, first said he was working during the time of the crime at a glass company and then changed his story to say that he was at the home of his common-law wife. During cross-examination the defendant's counsel asked the witness whether he had recorded this information. Thereupon the prosecutor tendered to the defense a two-page report prepared by the witness. It was accepted by the defense without objection. Neither the defense nor the State made any further reference to the report, either during the trial or in argument.

■■■ Tendering the unrequested police report to the defendant's counsel placed upon him the unfair burden of either using the report to impeach the witness or running the risk that the jury would assume that the report corroborated the witness. If there was nothing impeaching in the report there was no way the risk could be avoided. This maneuver by the prosecution has been held to be error. People v. Lowe, 84 Ill App2d 435, 228 NE2d 563 (1967) ; People v. Beard, 67 Ill App2d 83, 214 NE2d 577 (1966). In this case, however, the error does not merit reversal. The defendant's counsel made no objection to the submission of the document and no comment was made by the prosecutor pertaining to it when it was tendered or thereafter. The incident, while improper, did not substantially affect the right of the defendant to a fair trial. People v. Bickham, 91 Ill App2d 465, 235 NE2d 400 (1968).

The judgment of conviction is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.