THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CONNIE LEWIS, Defendant-Appellant.

First District (3rd Division)    No. 60381

Opinion filed July 20, 1977.

G. Michael Cooper, III, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Gary W. Adair, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Defendant Connie Lewis was indicted and tried for the murder of Robert Broussard. A jury returned a verdict of guilty of voluntary manslaughter and defendant was sentenced to five to 20 years. Defendant appeals contending that the prosecutor's use of defendant's post-arrest silence on cross-examination of defendant and direct examination of other witnesses, violated defendant's right to due process of law; the trial court erroneously instructed the jury on voluntary manslaughter; since the evidence was entirely circumstantial, the trial judge improperly refused

to give the second paragraph of IPI Criminal No. 3.02; the trial judge admitted evidence of a dying declaration without having first received the foundation evidence; the trial judge erroneously admitted hearsay testimony as a spontaneous declaration; defendant was denied the right to complete the impeachment of two State witnesses by introducing their prior inconsistent statements; the trial judge allowed the prosecution to introduce evidence of defendant's prior convictions, but denied defendant the right to impeach John Flores through the use of John Flores' prior convictions; the court received incompetent evidence on the cause of death issue; and the State failed to prove defendant guilty beyond a reasonable doubt.

Defendant testified that on October 12, 1972, he was in Jazzbo's Tavern at 83rd and Burley in Chicago from approximately 10:30 p.m. until 1:50 a.m. on October 13; that he then went home to 8308 South Burley where he had been living with Barbara Olmos in a second-floor apartment for about six months. When he arrived Olmos, John Flores, and Robert Broussard, the decedent, were already in the apartment and decedent had already been wounded.

Barbara Olmos and John Flores testified that defendant was present when Broussard was stabbed. The testimony of Olmos and Flores was essentially the same. Flores arrived at the apartment about 1:45 a.m. on the 13th. Broussard admitted Flores to the apartment where Olmos and defendant were quarreling in the bedroom. Flores heard a "thump up against the wall" and went into the bedroom where he saw the defendant choking Olmos. He separated them and hit the defendant knocking him down. Broussard, who had followed Flores to the bedroom, then challenged defendant to pick on someone besides a woman. Defendant arose and hit Broussard in the chest knocking him across the room. Broussard became angry and wanted to fight. Olmos asked Flores to tell them to go outside if they wanted to fight. Olmos, Flores and Broussard left the bedroom and entered the kitchen. Defendant then came out of the bedroom and began "slashing" at Broussard with a butcher knife. It is unclear whether he obtained the knife from the bedroom drawer where Olmos testified she sometimes kept kitchen knives, or from the kitchen table. Both Olmos and Flores agree, however, that as defendant approached Broussard with the knife, Broussard picked up a kitchen chair and attempted to evade defendant by backing into the living room with the chair between him and defendant. The witnesses testified that they heard noises from the living room but neither of them actually saw defendant stab Broussard. They did see defendant come out of the living room with the knife in his hand. Broussard then came out of the living room clutching his chest, fell to his knees and said to Flores, "John, he

stabbed me in my heart." Defendant then came into the kitchen after Flores with the knife but Flores managed to disarm him.

Defendant denied he was present when the stabbing took place but regarding what happened after that, the testimony of defendant and the other witnesses is essentially the same. Flores went to Broussard, examined the wound and told Olmos to hold a towel to the wound until he and defendant went for an ambulance since there was no phone in the apartment. It is not clear whether Flores or defendant handed Olmos the towel.

Flores and defendant went downstairs and called the police. A few minutes later Flores flagged down a police patrol car. He told the police officer whose name he later learned was Officer Robert Ellman, that there was a man in the apartment upstairs who had been stabbed. Ellman, Flores and defendant went up to the apartment and Ellman called on the two-way radio he carried for a squadrol to take Broussard to the hospital. When Ellman asked what had happened he received no reply from any of the persons present. The three men then carried Broussard downstairs and laid him on the grass near the squad car. Olmos followed a few minutes later and yelled, "You stabbed him, Connie," and called the defendant obscene names. She then went back upstairs. At that time the squadrol and another police car arrived and Officer Willis Zalalis, at Ellman's direction, put defendant under arrest. Flores went with Broussard in the squadrol to the hospital where Broussard was pronounced dead.

Officer Robert M. Marek who had arrived with Zalalis accompanied Officer Ellman upstairs to talk to Olmos who was described as crying and hysterical. Olmos said nothing but when asked where the knife was, took the knife from the kitchen sink and gave it to the police officers. Ellman and Marek then went downstairs where Marek advised defendant, who had been standing near the squad car with Zalalis of his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Marek and Zalalis, the arresting officers then transported defendant to the police station without questioning him at the scene.

Defendant's first argument on appeal is that under *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), the prosecutor's use of defendant's post-arrest silence to impeach defendant's exculpatory story told for the first time at trial and the prosecutor's comments in closing argument violate due process. In the instant case defendant testified on direct examination that he was at Jazzbo's and not at the apartment when the stabbing took place. On cross-examination the prosecutor asked the defendant why, upon being arrested, he did not tell the officers that he did not stab Broussard; that he had not been in the apartment when the

stabbing took place; that he had been down the block at a tavern where he was known by the bartender. No specific objection was made to this line of testimony regarding defendant's right to remain silent after having been given his constitutional rights.

In *Doyle* two defendants, Doyle and Wood, were arrested for selling marijuana and were given their rights under *Miranda* after which defendant Wood apparently opted to remain silent and did not respond to the questions of arresting officers while Doyle asked only "What is this all about?" During trial defendants testified that they thought they were being framed by a police informant. This explanation characterized by the Supreme Court as "exculpatory" and "not implausible," had never been given to arresting officers, police or prosecutors until trial. On cross-examination the prosecutors repeatedly asked defendants if they had told the arresting officers what had happened, offered any explanation or protested their innocence. Over timely objection by defense counsel to each of the questions, defendants were allowed to answer that they had not given any exculpatory explanation to the arresting officers.

The defendants were convicted, their convictions were upheld on appeal and the United States Supreme Court granted *certiorari* and reversed and remanded holding that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving the *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. The State has not claimed that such use in the circumstances of this case might have been harmless error. Accordingly, petitioners' convictions are reversed * * *." *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245.

The instant case is distinguishable from *Doyle* in three respects. First, the defense on direct examination asked defendant what he had said to arresting officers. Defendant said that he asked what he was being arrested for and then said nothing else at the scene. Although defendant on appeal suggests that he remained silent after receiving his *Miranda* warnings, defendant's testimony indicates that he only remained silent at the scene but not after being taken to the police station. Defendant testified on direct examination at trial that when asked by the arresting officers in the police station if he stabbed Broussard, he responded that he had not, that he did not know what had transpired in the apartment since, "I just got there." As in *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166, "[W]e do not have the question presented of the right of the accused to remain silent." Defendant by his own admission did not maintain post-arrest silence, nor did he give his exculpatory explanation for the first time at trial as did the defendants in *Doyle*.

■■ Secondly, in *Doyle*, defense counsel made timely objection to the prosecutor's questions. No such objections were made in the instant case.

Defense counsel on direct examination was first to ask defendant what he had said at the police station. No objection at all was made when the prosecutor early in cross-examination asked defendant about his post-arrest silence. Later in cross-examination when a similar line of questions was broached, defense counsel objected to the characterization of defendant's testimony as a "story" and when defendant was asked if he had ever told other members of the community he was not there when Broussard was killed, defense counsel objected stating that it was immaterial and irrelevant. Both objections were sustained. In closing argument only one objection was made to the prosecutor's several references to defendant's post-arrest silence. That objection was a general objection and would seem to refer to the prosecutor's use of the word "story." That objection was overruled. This case is distinguishable from the recent case of *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295, where this court reversed and remanded because defense counsel's objections while not specific were clearly aimed at the *Doyle* line of questioning by the prosecutor. Close scrutiny of the record persuades us that this was not the case here. Failure to make proper and timely objection to the admission of evidence claimed to be objectionable generally constitutes a waiver of the right to object and cures the error, if any. (*Queen*, at 564.) In addition Monaghan involved post-arrest silence, which, as we previously discussed, is not present here.

Thirdly, we believe the error, if any, is harmless beyond a reasonable doubt in light of the evidence against defendant. In this case two witnesses, Flores and Olmos, testified independently that defendant was present in the apartment, argued with Olmos, choked her; that Flores struck defendant and knocked him down; that defendant then hit Broussard and knocked him down. He came after Broussard with a kitchen knife; slashed at Broussard with the knife while Broussard backed into the living room holding a kitchen chair in front of him; came out of the living room with the knife, now with blood on it, in his hand. They testified that Broussard came out of the living room where only he and defendant had been present, clutching his chest and yelling, "John, he stabbed me in my heart."

Their testimony is corroborated by Severine Flores who testified that defendant came to her house around 11:30 that evening looking for her husband, John Flores. She told him John was asleep. He asked if Broussard was there. She said he was and admitted defendant to the house. Defendant asked Broussard if he would go with him to Olmos' house and help him get in through a window since he did not have a key even though he had been living there for about six months. Broussard said he would help him and they left taking a bottle and a half of wine from the refrigerator. This coincides with Flores' testimony that he and

Broussard were at Flores' house around 10 p.m. watching television. Flores went to sleep and woke up about 1:30 a.m. He left the house and went to Olmos' apartment arriving about 1:45 a.m. Broussard admitted him to the apartment where defendant and Olmos were quarreling.

Defendant maintains that from 10:30 p.m. until almost 2 a.m. he was at Jazzbo's tavern a half block away from the Olmos apartment and that when he arrived at the apartment Broussard was already wounded. Defendant's testimony is uncorroborated.

■■ Therefore, even assuming *arguendo* defendant had maintained post-arrest silence and told his exculpatory story for the first time at trial and that the cross-examination of the defendant about his post-arrest silence was error, in light of the evidence against him, the error was harmless. (*People v. Mitchell* (1975), 27 Ill. App. 3d 117, 327 N.E.2d 158.) Before a Federal constitutional error, such as an error regarding a defendant's right to remain silent, can be held harmless, the court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. (*People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681.) As stated above, we find the error, if any, harmless beyond a reasonable doubt.

■■ We believe that the foregoing comments also constitute an adequate response to defendant's argument that he was not proved guilty of voluntary manslaughter beyond a reasonable doubt. A reviewing court will not disturb the jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable and unsatisfactory as to justify the court in entertaining a reasonable doubt as to the accused's guilt. (*People v. Young* (1975), 25 Ill. App. 3d 629, 323 N.E.2d 788.) In the instant case we find no reason to overturn the jury's verdict of guilty.

Defendant next argues that the trial court erroneously instructed the jury on voluntary manslaughter since defendant was indicted for murder, presented an alibi defense and the State argued for a verdict of guilty of murder. Defendant contends he was prejudiced by the court's allowing the voluntary manslaughter instruction since an effective defense against manslaughter was precluded because manslaughter was not introduced as an issue until after the close of testimony during the conference on instructions.

Defendant testified he was not present when decedent was stabbed. He maintained he was at a nearby tavern and did not arrive at the apartment until after the decedent had been wounded. Olmos and Flores testified that he was present, had argued with Olmos, been in a fight with Flores and Broussard and that Broussard had provoked him to continue that fight.

■■ In a homicide case if there is any evidence in the record which,

if believed by the jury, would reduce the crime to manslaughter, an instruction defining that crime should be given if requested. (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.) When the evidence in a murder case would support a verdict of manslaughter and the defendant does not request a manslaughter instruction the giving of such an instruction is committed to the discretion of the trial judge. (*People v. Hall* (1975), 25 Ill. App. 3d 992, 324 N.E.2d 50.) This is true even where the defense counsel objects to the instruction. (*People v. Pierce* (1972), 52 Ill. 2d 7, 284 N.E.2d 279.) In the instant case, the evidence of Olmos and Flores, if believed, is sufficient to support a verdict of voluntary manslaughter. Manslaughter is a lesser included offense of the charge of murder and accordingly one who is indicted for the greater crime of murder may be convicted of the lesser crime of voluntary manslaughter (*People v. Sulton* (1970), 130 Ill. App. 2d 1098, 266 N.E.2d 351), and a defendant should not be heard to complain of the voluntary manslaughter instruction being given, even though he did not request it, where the evidence will support a verdict of voluntary manslaughter. (*People v. Pote* (1975), 26 Ill. App. 3d 742, 326 N.E.2d 236.) The instruction should be given even though the theory of the defense at trial is inconsistent with the possibility that the defendant is guilty of the lesser offense. (*People v. Jenkins* (1975), 30 Ill. App. 3d 1034, 333 N.E.2d 497.) It is therefore not error for the trial court to give voluntary manslaughter instruction.

■■ Nor was it vague, confusing or misleading for the court to give three rather than four forms of verdict. In the instant case three verdict forms were given: guilty of murder, guilty of voluntary manslaughter and not guilty. The court is under no obligation, absent a request or objection, to give a not guilty form of verdict for each charge. (*People v. Lilly* (1972), 9 Ill. App. 3d 46, 291 N.E.2d 207.) In the instant case three verdict forms were sufficient. (*People v. Lynch* (1969), 111 Ill. App. 2d 52, 249 N.E.2d 649.) The tendering of a not guilty of voluntary manslaughter verdict would have been mere surplusage. (*People v. Gargano* (1973), 10 Ill. App. 3d 957, 295 N.E.2d 342.) We see no prejudice to the defendant.

■■ Defendant also complains that the trial court erred in its failure to give a portion of an instruction. The trial court defined circumstantial evidence according to IPI Criminal No. 3.02, but refused to give the optional second paragraph of said instruction which reads as follows:

"You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The second paragraph of the instruction should be given only where the evidence of the necessary elements to the crime are *entirely* circumstantial. (*People v. Hayes* (1973), 11 Ill. App. 3d 359, 269 N.E.2d 649.) One of the necessary elements of voluntary manslaughter as defined

by statute (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(a)) is a sudden and intense passion which was shown by the direct testimony of Olmos and Flores. They testified that they saw the defendant in an angry and belligerent state arguing with Olmos, Flores and Broussard; that Broussard after being knocked down by defendant continued to insist on fighting with defendant. Olmos and Flores sided with Broussard which could have inflamed defendant. Although neither Flores nor Olmos testified they actually saw defendant stab Broussard, they did say they saw him slashing at him while Broussard attempted to fend him off using a kitchen chair for protection. They then saw the two men enter the living room, heard the noise of a scuffle and a few minutes later defendant came out with a bloody knife and Broussard was mortally wounded. This evidence was clearly not circumstantial.

Defendant argues that the trial court erred in admitting the testimony of Olmos and Flores that Broussard came out of the living room holding his chest, fell to his knees and yelled, "John, he stabbed me in my heart," since there was no foundation laid for a dying declaration because neither Olmos nor Flores told Broussard he was dying, nor did Broussard state that he knew he was fatally wounded. However, since defendant did not object to this testimony at trial, although he had ample opportunity to do so, he cannot raise a hearsay objection for the first time on appeal. *People v. Hudson* (1972), 6 Ill. App. 3d 1062, 287 N.E.2d 41.

■■ Even if there had been a timely objection Broussard's statement would be admissible as a spontaneous declaration or excited utterance as defined in *People v. Thomas* (1977), 49 Ill. App. 3d 961, 364 N.E.2d 641, and *People v. Henricks* (1975), 32 Ill. App. 3d 49, 335 N.E.2d 521. As was stated in *People v. Damen* (1963), 28 Ill. 2d 464, 471, 193 N.E.2d 25:

" 'A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance

may be taken as expressing the real belief of the speaker as to the facts just observed by him.' "

We believe that Broussard's immediate outcry that he had been stabbed in the heart was made under circumstances sufficiently startling to produce a spontaneous statement, with an absence of time to fabricate, and related to the circumstances of the occurrence so that the statement would qualify as a spontaneous declaration. For these reasons the testimony was proper.

■■ Defendant next argues that the trial court erroneously admitted hearsay testimony as a spontaneous declaration. He argues that Barbara Olmos' statement to the defendant, "you killed him, Connie," after defendant Flores and Officer Marek carried decedent outside of the apartment to wait the squadrol, was hearsay. The State responds that the testimony was proper because there was an opportunity for cross-examination of the declarant; that there was no objection to the testimony; that the silence of the accused in light of the accusation is admissible as an implication of guilt because it gives rise to the inference of the truth of the accusation; that this was a spontaneous declaration; and finally that the evidence was merely cumulative. We need only consider the first of the State's contentions. In a quite similar case, *People v. Burks* (1969), 105 Ill. App. 2d 112, 245 N.E.2d 120, a policeman testified that the victim of a rape upon seeing the defendant after herself said, "That is the man there." The victim in the case had testified to the same effect. The court commented that the victim confronted the defendant in court and was extensively cross-examined. The court stated:

"The defendant thus had the opportunity to test her declaration, and its repetition by the police officer, under these circumstances, did not violate the hearsay rule which is designed not to exclude all out-of-court statements but only those which the party against whom they are offered has no opportunity to test by cross-examination. People v. Carpenter, 28 Ill. 2d 116, 190 N.E.2d 738 (1963)." 105 Ill. App. 2d 112, 118.

So too in the case at bar the witness, Olmos, testified and was extensively cross-examined. Accordingly, her statement was properly admissible.

■■ ■ The defendant argues that the trial court committed reversible error in refusing to submit to the jury copies of pretrial statements made by Flores and Olmos which allegedly impeached their trial testimony. We disagree. These statements issued by Flores and Olmos were written by police officers and signed by the witnesses at the police station after the arrest of the defendant. They were used by counsel on cross-examination of the witnesses. Whether or not the

typewritten statements should have been given to the jury was within the discretion of the trial court. (*People v. Bruce* (1975), 32 Ill. App. 3d 404, 336 N.E.2d 354; *Kaspar v. Clinton-Jackson Corp.* (1969), 118 Ill. App. 2d 364, 254 N.E.2d 826.) The trial court did not abuse its discretion in not allowing the jury to have copies of the pretrial statements.

Defendant contends the trial court abused its discretion in allowing defendants three prior convictions for robbery into evidence while not allowing all of Flores' convictions into evidence for impeachment purposes. Defendant cites *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695 for the proposition that the evidence of a prior conviction should be excluded if "the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." In *Montgomery* the court reversed and remanded holding at page 511 that the defendant's "21-year-old prior conviction admitted into evidence bore no rational relationship to the defendant's present credibility, and should not have been admitted."

The *Montgomery* court at page 513 cites the applicable statute which provides:

> " 'No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction *may* be shown for the purpose of affecting his credibility * * *.' (Emphasis supplied.) (Ill. Rev. Stat. 1967, ch. 38, par. 155—1.)"

At page 516 the *Montgomery* court then sets out the following rule approved by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States which provisions, they state, should be followed:

> " 'Rule 609, Impeachment by Evidence of Conviction of Crime
>
> '(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.
>
> '(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date.
>
> '(c) Effect of Pardon, Annulment, or Certificate of

Rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and (2) the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence.

'(d) Juvenile Adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The judge may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

'(e) Pendency of Appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.' 51 F.R.D. 391." 47 Ill. 2d 510, 516.

■■ ■ The trial court in the instant case properly applied the *Montgomery* standards in allowing defendant's three prior convictions for robbery in 1965, 1965 and 1967 on which he was released from prison in 1971. (*People v. Ray* (1976), 36 Ill. App. 3d 283, 343 N.E.2d 560.) The trial court in its discretion properly applied *Montgomery* to allow Flores' 1965 misdemeanor theft convictions which resulted in a four month sentence since it may have reflected on Flores' honesty in testifying; and his 1965 conviction under the Dyer Act which resulted in a commitment under juvenile law for the duration of his minority. It properly denied the use of Flores' conviction for criminal trespass to vehicle where the sentence was for not more than one year. He also denied use of Flores' convictions for battery because neither resulted in a conviction of more than one year and neither reflected on his credibility.

We conclude that the trial court did not err in allowing defendant's convictions or in disallowing some of Flores' convictions to be introduced into evidence. On the contrary, the trial court even allowed the defendant additional time to examine the arrest record of Flores and to get additional information. Nothing was withheld from defendant or the court which may have caused prejudice to the defendant. *Cf. People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498.

Defendant next complains that the trial court erred in allowing the coroner's pathologist, Dr. Pascual Culala, to testify as to the cause of death since Dr. Culala did not perform the post mortem examination himself. We find this contention without merit. Dr. Culala was present as the supervising doctor when the autopsy was performed by a trainee-doctor. Dr. Culala supervised the surgical procedures, observed and

122

participated in the examination, collaborated with the trainee-doctor in the preparation of the report, and signed the report as supervising doctor.

■■ No challenge is made of the accuracy or competency of the report, but only of the credentials of the trainee-doctor who wrote the report and who, for reasons unrelated to the instant case, is no longer on the coroner's staff. We find that Dr. Culala's participation in and observation and supervision of the actual medical procedures and his supervision of and concurrence in the report with his signature thereon as "Coroner's Physician" is sufficient to bring him under the provisions of the statute which provides that "persons who prepare reports or records given in evidence hereunder may be subpoenaed as witnesses." Ill. Rev. Stat. 1971, ch. 51, par. 3.03.

■■ Finally, defendant citing *People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485, argues that he was not proved guilty beyond a reasonable doubt. In *Willson* the only witness to the shooting of decedent was a three-year-old child who was found incompetent to testify. In the instant case two witnesses, Flores and Olmos, whose competence was never challenged, testified that the defendant was present at the apartment when the stabbing took place. As stated above, we find no reason to overturn the jury's verdict.

For the foregoing reasons the verdict is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.