THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT HUNTER *et al.*, Defendants-Appellants.

Fourth District No. 14163

Opinion filed June 2, 1978.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant Willie Hunter.

Robert J. Waaler, of Champaign, for appellant Robert Hunter.

Thomas J. Difanis, State's Attorney, of Urbana (John R. DeLaMar and James L. Dobrovolny, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court: Defendants Robert and Willie Hunter were jointly indicted and tried by a jury in the circuit court of Champaign County for the murders of Jack Heren and James Rogers. The jury found Robert Hunter guilty of both murders but found Willie Hunter guilty of only the Rogers murder and acquitted him of the Heren murder. Robert Hunter was sentenced to concurrent terms of 75 to 150 years' imprisonment for each offense and Willie Hunter to a single term of 75 to 150 years.

On appeal Willie Hunter contends that the evidence was insufficient to support his guilt of the Rogers' murder and that the indictment should have been dismissed because two police officers were present during the grand jury proceedings while witnesses were testifying. Robert Hunter maintains on appeal that the court erred in: (1) denying his motion to dismiss for lack of a speedy trial, (2) permitting the introduction of evidence improperly seized, (3) giving improper instructions on

circumstantial evidence and accountability, (4) denying his motions for a severance as to counts and parties, (5) failing to *sua sponte* call an individual as a court's witness, and (6) granting the State's *in limine* motion to prohibit him from asking witnesses if they were paid police informants. He also claims error in the presence of the police officers in the grand jury room, the failure of the State to give ordered discovery and because no attorney was appointed for him until he had been in custody for 18 days during which time he testified before the grand jury.

The offenses occurred near the Golden Rod Tavern on North First Street in the city of Champaign about 1 a.m. on February 4, 1976. Several witnesses testified that the defendants, who were brothers, had entered the tavern together earlier and that Robert had a gun in his waistcoat. Some of those witnesses described the gun as having a light colored handle and one noticed a rubber band on the handle. Two witnesses testified that later they were drinking and smoking marijuana in a car parked outside the tavern when they saw William Johnson and defendant Robert Hunter hitting and shoving a white man in front of the Star Record Shop which was next door to the tavern. Johnson was indicted with the Hunters but his case was severed for trial. These witnesses testified that they left before anything further happened.

Another witness testified that he left the tavern and saw the two Hunters and another black man whom he did not know fighting a white man in front of the record shop. The witness further stated that as he went to get his car, he noticed that the third black man and Willie Hunter went into the tavern while Robert Hunter remained outside and continued to hit the white man. This witness stated that after he got to his car he drove back by the tavern and saw Robert Hunter walking down First Street, a north-south street, and turn onto Park Street, the first east-west street south of the tavern, and then run between two houses. This witness testified that he heard no shots but stated that he had a bad muffler which was very noisy. He admitted that he had lied to the police and to the grand jury when he said that he did not recognize the four men whom he saw fighting.

At about closing time of 1 a.m., various witnesses heard noises outside the tavern which resembled shots. Two witnesses testified to hearing similar noises a few minutes later. Johnson entered the tavern after the first series of noises and stated that someone had been shot outside. Heren was found outside the record shop lying on the pavement with blood on his face. A broken white pistol grip was found near Heren's body. Heren was white.

Brenda Hobbs, daughter of the operators of the tavern, testified that just before closing time, as she was turning off the tavern lights, she heard 4 or 5 noises resembling a car backfiring and then saw Robert Hunter

walking on First Street past the front windows of the tavern and towards Park Street. She said that she saw him tuck a gun or similar object into his pants pocket as he passed. Later that evening at about 2 a.m., she left the tavern and was walking east on Park Street when she saw the body of James Rogers in the side stairwell of the tavern. Brenda's sister, Linda, confirmed her testimony and also stated the backfiring noises were in two groups and that the later group sounded as though they were coming from the area outside the tavern to the south. This was the area where Rogers' body was found. The evidence appears to be undisputed that at the time of the first banging sound, Willie Hunter was in the tavern and immediately ran out.

A cab driver testified that between 1:30 and 2 a.m., he was called to a residence on Wascher Drive in Urbana where two black males, one carrying a brown paper bag, entered his cab. These men introduced themselves as Willie and Robert Hunter. The description the cab driver gave of them fitted the description of the Hunters given by the other witnesses. The cab driver stated that he drove these men to the 400 block of East Church Street in Champaign where he let them out. Other evidence showed that Willie Hunter lived at 404 East Church Street with Ellen Louise Terry. Later, a police officer observed a 1971 Pontiac on the south side of the 100 block of East Church Street in Champaign. Church Street is one block north of Park Street and the 100 block is just east of First Street. Willie Hunter was seen walking away from this car. The officer stated that Willie Hunter admitted to him that he had been driving the car. In the trunk of the car was found a brown sack with a dismantled .22-caliber Colt revolver and a .32-caliber revolver.

Other evidence linked the pistol grip found by Heren's body with the .22-caliber Colt revolver found in the Pontiac. A ballistics expert testified that the bullets that killed Heren could have been fired from that gun. He also testified that the .32-caliber revolver found in the bag in the car definitely fired a bullet that was shown to have been removed from James Rogers' brain.

We consider first the question of whether the evidence was sufficient to prove Willie Hunter's guilt beyond a reasonable doubt. Nathan Hobbs, proprietor of the tavern, and Sterling Atkins testified to having seen a dark-handled gun in Willie Hunter's possession while he was in the tavern just prior to the shootings. Both were impeached in that written statements given by them to the police shortly after the shootings made no mention of their seeing a gun in Willie Hunter's possession. Prior to trial, criminal charges involving other incidents had been dismissed as to Atkins but two assistant State's attorneys testified that the dismissal was not related to Atkins being a witness in the Hunter case. The evidence is undisputed that Willie Hunter left the tavern just after the first shots were

heard. Linda Hobbs testified that at about this time she heard sounds resembling the backfiring of a car coming from the area where Rogers' body was later found. It would have been unlikely that Rogers was shot after that time because police officers and others who were in the area then would have heard the shots. Several witnesses saw Rogers in the tavern shortly before the first shots were heard.

The weapons expert positively identified the bullet found in Rogers' head as having come from the brown-handled revolver found in the paper bag in the trunk of the car Willie Hunter had been driving. He also testified that the bullets taken from Heren's body appeared to be from a .22-caliber weapon and not from a .32-caliber weapon like the brown handled revolver. The cab driver had testified that the Hunters had a paper bag with them when he drove them to the 400 block on East Church Street in Champaign. Evidence indicated that Rogers was one of those beating on Heren. Willie Hunter would have had a motive to kill Rogers because Rogers might have been a witness against Willie's brother Robert in a trial for the killing of Heren.

■■ In *People v. Tillman* (1969), 116 Ill. App. 2d 24, 253 N.E.2d 873, the accused was shown to have purchased the death weapon and to have made a payment on it the day before the killing. The weapon was found abandoned after the killing. When approached by police for questioning, the accused fled. Although the accused was not shown to have a motive and was not shown to have been at the scene of the crime, this court affirmed despite substantial alibi testimony by defendant. Here there is a showing that the accused had a motive, was at the scene of the crime and had the death weapon in his possession a few hours later. Some evidence indicated that he possessed a weapon resembling the death weapon a short time before the shooting. The jury could properly have determined beyond a reasonable doubt that Willie Hunter murdered Rogers.

■■ Both defendants contend that the presence of two police officers in the grand jury room while testimony of other witnesses was being presented required that the indictment be dismissed. Section 112—6(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 112—6(a)) states that sessions of the grand jury may be attended by the State's attorney, his reporter and "any other person authorized by the court." Here, the court had entered an order authorizing the presence of the officers. The purpose of making grand jury proceedings secret is so that (1) the accused will not flee before indictment, (2) the witnesses may make free and truthful disclosures without coercion, and (3) the innocent may be protected against unwarranted exposure (*People v. French* (1965), 61 Ill. App. 2d 439, 209 N.E.2d 505). The prevention of coercion is the principal aspect of the secrecy requirement designed to protect the defendants. Even when the presence of persons in the grand jury room

during testimony is unauthorized, undue influence is not presumed (*People v. Gould* (1931), 345 Ill. 288, 178 N.E. 133). No showing was made here that the police officers coerced any testimony. As they were not intermeddlers, no undue exposure would be likely to occur. Their authorized presence in no way vitiated the indictment.

We find no error in the conviction of defendant Willie Hunter and now turn to the claims of error made exclusively by defendant Robert Hunter.

Robert Hunter's contention that the trial court erred in not allowing his June 7, 1976, motion for discharge made pursuant to the 120 days' provision of section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5) raises a serious and complicated question. He was arrested on February 4, 1976, on an existing warrant issued upon a rape charge against him and remained in custody in the Champaign County Jail from that date until he made his motion for discharge 123 days later. He was not indicted for the murders until March 2, 1976. He was never tried for the charges on which he was arrested. The murder charges were originally set for trial on May 3, 1976, but on April 28, 1976, upon the court's own motion, the trial date was continued until June 7, 1976.

The State argues that the trial court properly denied the motion for discharge because (1) the defendant was not in custody upon the murder charge until his indictment on March 2, 1976, less than 120 days before the filing of the motion for discharge, and (2) defendant's conduct at the hearing on April 28, 1976, pursuant to which the continuance was ordered amounted to delay tolling the running of the 120-day period (par. 103—5(a)). Robert Hunter responds by arguing that his arrest for rape was a sham, that he was actually in custody for the murders on February 4, and he caused no delay. The trial court denied the motion without determining whether the rape warrant was a sham excuse for the arrest or whether defendant caused delay. The rationale of the decision was that, in any event, under the circumstances the combined provisions of sections 114—4(d) and 103—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, pars. 114—4(d), 103—5(c)) gave the court power to extend the trial date beyond the 120-day period.

On April 28, 1976, the trial court had held a hearing on various pending matters. Defendants, including Robert Hunter, complained that the State had not been giving them the continuing discovery previously ordered by the court. The statements of the various counsel indicated that the F.B.I. had been delayed in sending the prosecutor reports of scientific tests being performed on various objects and this had prevented the prosecutor from giving discovery of this information to the defense counsel. Counsel for Robert Hunter also expressed dissatisfaction with

the amount of transcribed grand jury testimony that had been given him by the State. The problem in that respect had to do with the sufficiency of funds to pay the transcription costs. Counsel for Robert Hunter stated that he felt that under all the circumstances, he was compelled to ask for a continuance from the May 3 trial date.

The trial judge stated that he believed that the prosecutor was giving discovery as fast as he could. He also stated, however, that he thought that fairness required that the defendants receive transcripts of all of the grand jury testimony regardless of whether it was of a witness who would be called by the State. He ordered that this be done although his previous order had only required the transcripts for the witnesses who would testify for the State. The judge then stated that he felt that fairness further required that a continuance of trial be ordered without the necessity of defendant Robert Hunter being charged with so moving. The court, on its own motion, then continued the trial until June 7, 1976. Nothing was said at the hearing to indicate that Robert Hunter claimed that his 120-day period began upon his arrest on February 4, 1976.

Section 114—4 governs the general procedure for making motions for continuances on criminal cases and lists the grounds upon which continuances may be allowed. Subsection (d) states that a court may, upon the motion of the parties or upon its own motion order a continuance for grounds not listed if it finds "that the interests of justice so require." Section 103—5(c) provides that upon the State's "application," the court may continue a case for not more than 60 days beyond the 120-day period if the court determines that the State, after "due diligence" has not been able to obtain material evidence and that there are reasonable grounds to believe that the evidence can be obtained. In granting the continuance here, the court indicated that the State had been diligent but had not been able to obtain discovery which it was required to furnish to the defendants including Robert Hunter and that this material would likely be available if the case were continued. At least some of the discovery material would likely be material evidence. Had the continuance been granted upon the State's request, the continuance would have extended the 120-day period if it terminated before the June 7, 1976, trial date.

■■ Although the express terms of section 103—5(c) provide for a 60-day extension of the 120-day period only upon the State's "application," under the circumstances of this case, we do not see that the fact that the continuance here was granted on the court's own motion makes a significant difference. By the law applicable to this trial, delay upon the part of Robert Hunter would cause the 120-day period to begin over again (see Ill. Rev. Stat. 1975, ch. 38, par. 103—5(f); *People v. Donalson*

(1976), 64 Ill. 2d 536, 356 N.E.2d 776). On the other hand, the rationale of section 103—5(c) is to permit a shorter (not to exceed 60 days) extension of the 120-day period in order to enable the State to obtain further evidence without defense consent. Here the evidentiary information was to be obtained by the State but the extension was needed by the defense to plan strategy upon the basis of the information it received. The continuance was ordered by the court to benefit the defendant and done on its own motion to protect the defendant from the detriment of having his own request constitute delay which would have extended the time within which the State had to try him by 120 days. The procedure selected by the court extended the period, if at all, for only a few days. The general policy of the Code of Criminal Procedure is to permit the court to grant continuances on its own motion "in the interests of justice." We do not see how the defendant Robert Hunter can here complain of or take advantage of the fact that he got the relief he requested and needed because that relief came upon the court's motion rather than that of the State.

The trial court properly denied Robert Hunter's motion for discharge.

■■ No evidence showing Robert Hunter to have any possessory or ownership interest in the 1971 Pontiac automobile or the items seized therein was presented at the hearing on the motion to suppress items taken from that vehicle. Possession of the items seized was not an element of the murder charges. Accordingly, he had no standing to challenge the search of the vehicle or the seizure of the items taken from the vehicle. (*People v. McNeil* (1972), 53 Ill. 2d 187, 290 N.E.2d 602; *Brown v. United States* (1973), 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565.) The denial of the motion was proper.

■■ The trial court refused Robert Hunter's tendered instruction in the form of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (hereinafter IPI), on circumstantial evidence which included the last paragraph which states:

> "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The court stated that the instruction would be given if the last paragraph was removed. The comments to the instruction state that the last paragraph should be included in the instruction only when the proof of guilty is entirely circumstantial. The proof of the guilt for Rogers' murder was clearly all circumstantial. Whether proof of guilt on the Heren murder was all circumstantial is not as certain (see *People v. Lewis* (1977), 51 Ill. App. 3d 109, 366 N.E.2d 446). In any event, we do not consider the failure to include the last paragraph in the instruction, even when

applicable, to be reversible error (*People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534). We do not rule it to be reversible error here.

■■ Over the objection of Robert Hunter, the court gave the following instruction on accountability:

> "The court instructs the jury that if there was evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design, there is an inference that he shared a common purpose and this will sustain his conviction of the principal for a crime committed by another in furtherance of the venture."

The instruction properly stated the law (*People v. Hill* (1968), 39 Ill. 2d 125, 233 N.E.2d 367, *cert. denied* (1969), 392 U.S. 936, 23 L. Ed. 2d 773, 89 S. Ct. 2150) and was applicable to the facts of this case because evidence was presented of both defendants beating Heren outside of the tavern. IPI Criminal No. 5.03, however, is the proper instruction on accountability and should have been given here (58 Ill. 2d R. 451(a)) but the error was not reversible.

■■ The trial court possesses reasonable discretion in a criminal case in ruling upon whether to sever as to counts (*People v. Williams* (1973), 14 Ill. App. 3d 789, 303 N.E.2d 585) or defendants (*People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321, *cert. denied* (1970), 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094). Here, as in *Williams*, the evidence indicated that the murders charged were part of the same transaction as distinguished from *People v. Bricker* (1974), 23 Ill. App. 3d 394, 319 N.E.2d 255, where the offenses occurred several hours and miles apart and the court ruled severance to be required. Although Robert Hunter claimed that he and his brother, Willie, had made inconsistent statements, no showing was made that they had antagonistic defenses. In *People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179, where, as here, neither defendant had confessed nor implicated the other prior to trial nor testified at trial, the court ruled that no error occurred in the refusal to grant a severance as to defendants. No error occurred here in the refusal to grant either severance motion.

■■ Calvin Dorris was a witness before the grand jury but was not called by the State. When Dorris failed to appear in response to a subpoena, he was brought into court upon a bench warrant. Defendant neither called him nor requested that the court call him as its witness. Defendant now contends that the court should have called him *sua sponte* as its witness. We know of no authority requiring the court to do so even if a showing is made that would require the calling of the witness as a court's witness if requested. No error occurred on this point.

■■ The trial court was also free of error in (1) allowing the State's

motion *in limine* prohibiting defense counsel from inquiring of State's witnesses as to whether they had ever been paid informers without first asking the question *in camera*, and (2) denying Robert Hunter's *in limine* motion excluding the use of his prior convictions for armed robbery and misdemeanor theft for purposes of impeachment. Even if the question of the witnesses' prior service as informers would show bias, the defense was not prejudiced in any substantial degree by being required to first ask the question out of the presence of the jury. It has been ruled that the court may withhold its ruling upon whether evidence of particular convictions of a defendant may be used to impeach him until after the defendant has testified. (*People v. Barksdale* (1974), 24 Ill. App. 3d 489, 321 N.E.2d 489.) By waiting to rule, the trial judge is usually in a better position to determine, as required by *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, whether the probative value of the evidence to negate defendant's credibility exceeds its prejudice to the defendant. Undeniably, the withholding of a ruling makes defense strategy more difficult. In this case, however, the convictions were relatively recent and for offenses bearing upon honesty. It is unlikely that the trial court would have excluded the evidence. See *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058; *People v. Lewis* (1977), 51 Ill. App. 3d 109, 366 N.E.2d 446.

Robert Hunter claims that he was prejudiced by the prosecution's failure to immediately relay to him information it had obtained by telephone from the F.B.I. on May 21, 1976, concerning the results of scientific tests on exhibits. The State furnished this by sending defense counsel copies of written reports from the F.B.I. on June 1, 1976. This was information that the State was required to furnish but no showing was made that defendant was prejudiced by not receiving the information sooner nor that the State did not file the written report as soon as it was available. Defense counsel had the report 10 days before trial and had he needed more time, should have requested a continuance after the court had ruled on the motion to discharge.

■■ Finally, defendant claims for the first time on appeal that he was deprived of effective assistance of counsel because he was not given an attorney until he so requested on March 22, 1976. Since he did not raise the issue in his post-trial motion, it is waived unless it is plain error. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) He was not indicted for the murder charges until March 2, 1976. No showing was made that he did not have counsel on the rape charges nor was a showing made that he was not seeking private counsel in the instant case. We find no plain error here.

Having found no error to have occurred which of itself or in combination with other error was of sufficient magnitude to reverse any

conviction of either defendant, we affirm all judgments from which appeal is taken.

Affirmed.

REARDON and TRAPP, JJ., concur.