No. 3--04--0551

_____

Filed November 6, 2006.

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois |
| | ) | |
| v. | ) | No.  99-CF-91 |
| | ) | |
| DONNELL L. SANDERS, | ) | Honorable |
| | ) | Michael Brandt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the OPINION of the court:
_____

After a jury trial, the defendant was convicted of first-degree murder (720 ILCS 5/9-1(a)(2) West 1999)) and sentenced to 75 years' imprisonment.  On direct appeal, the conviction was reversed and the case was remanded for a new trial.  After a second jury trial, the defendant was again convicted of first degree murder and again sentenced to 75 years' imprisonment.  The defendant appeals a second time.  In this, the direct appeal from the defendant's second jury-trial conviction, the defendant argues: (1) that the trial court committed plain error in providing an inadequate and misleading response to a jury question; (2) that defense counsel provided ineffective assistance of counsel in regards to the jury question; and (3) that the trial court erred in admitting the prior testimony of one of the plaintiff's expert opinion witnesses who had testified at the first trial but had died before the second trial.  We affirm.

FACTS

In February of 1999, the defendant was charged with the first degree murder of twenty-three month old Kareena Davis (the victim). The indictment alleged that the defendant violently shook the victim and struck the victim's head, knowing that such acts created a strong probability of great bodily harm to the victim and thereby causing the death of the victim. The case proceeded to a jury trial in August of 2000. The defendant was found guilty and was subsequently sentenced to 75 years' imprisonment. The conviction was reversed on direct appeal and the case was remanded for a new trial. A second jury trial was held in May of 2004.

The evidence presented at the second jury trial showed that the victim was fatally injured while her mother was at work and the defendant was watching her. The defendant did not call 911 immediately. The autopsy showed that the victim had marks of bruising around her chin and her arms, an impact site on the back of her head, swelling of the brain, a subdural hemorrhage that matched the impact site, and massive retinal hemorrhages. The pathologist that conducted the autopsy concluded that the victim died from blunt force injuries to the head. The State presented the testimony of the emergency room doctor that treated the victim, the pathologist that conducted the autopsy, and two expert opinion witnesses to support its theory of the case--that the victim died as a result of shaken impact syndrome.[1] That is, that the defendant had shaken the victim and that during the shaking, the victim's head had impacted an object causing the victim's death.

---

[1]The testimony of one of the State's expert opinion witnesses was presented in rebuttal.

Over the defendant's objection, the testimony of one of the State's expert opinion witnesses, Dr. Robert Kirschener, was presented to the jury in the form of a deposition.[2] Kirschener had testified for the State at the defendant's first jury trial but had died before the second trial. During his testimony in the first trial, Kirschener was cross-examined by defense counsel about the existence of an opinion in the medical community contrary to his own. Kirschener acknowledged that such an opinion existed and stated that Dr. John Plunkett was one of those people that held a contrary opinion to his own.

The defense's theory of the case was that the victim died, not as a result of shaken impact syndrome, but as the result of an accident from falling down the stairs. The defendant testified at the second trial that he found the victim at the bottom of the stairs after hearing what he described as a thump sound. The defendant denied that he had shaken or struck the victim. Defense counsel presented the testimony of an expert opinion witness, Dr. Plunkett, who testified in support of the defense's theory of accidental death. Dr. Plunkett had published an article entitled, "Fatal Pediatric Head Injuries Caused By Short Distance Falls" in the American Journal of Forensic & Medical Pathology in 2001 (after the first jury trial but before the second jury trial).

Prior to deliberating, the jury was instructed on the law, including the elements of first degree murder. That instruction provided as follows:

> "To sustain the charge of First Degree Murder, the State must

---

[2]The testimony of Dr. Kirschener from the first trial was redacted to exclude a comment that this court found to be improper in the first direct appeal and to exclude comments regarding an expert witness who was not going to testify in the second trial.

3

prove the following propositions: (f)irst (p)roposition: (t)hat the defendant performed the acts which caused the death of Kareena Davis; and (s)econd (p)roposition: (t)hat when the defendant did so, he knew that his acts created a strong probability of death or great bodily harm to Kareena Davis. If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

During the course of deliberations, the jury sent the following question to the judge:

"Question on the second proposition that when the defendant did so, is the basis for our decision whether he knew he could or did he have the intent to create a strong probability of death or great bodily harm...? Is intent required?"

After receiving the question, with the defendant present, the trial judge consulted with the attorneys for both sides. The following conversation ensued:

"[THE COURT:] On the record in 99 CF 91, defendant Mr. Sanders present, all counsel present. The jury had a question, and it is in writing and the court has shared the question with counsel for both sides. Any input from the State?

MS. MERMELSTEIN: Well the State believes that the answer

is intent is not required, not by the way it was charged or not by the issues instruction.

THE COURT: And do you wish the Court to answer that accordingly?

MS. MERMELSTEIN: Yes.

THE COURT: Input from the defense?

MR. FLANAGAN: I believe the instructions should remain as they are, your Honor.

THE COURT: All right. They are--I don't think anyone is suggesting any further instruction. The Court will answer the question. It is a simple question, is intent required, and the answer simply is no. But I'll also add in there 'please follow all jury instructions'. We'll give this to the bailiff, and please tell the jury to retain this so it's part of the record. As far as the hour, the Court is of the reasoning that the jury should be sent home, but we'll let them digest this here at least. Give this to the foreperson.

THE BAILIFF: Yes, sir."

After discussing the matter with both parties, the trial court responded in writing to the jury question as follows: "No, please follow all jury instructions."

The defendant was subsequently found guilty of first degree murder. The defendant filed a motion for new trial alleging, among other things, that the trial court erred in its response to the jury's question regarding "intent" and that the trial court erred in admitted

5

the prior testimony of Dr. Kirschener. The trial court denied the motion and again sentenced the defendant to 75 years' imprisonment. This appeal followed.

ANALYSIS

As his first point of contention on appeal, the defendant argues that the trial judge erred in his response to the jury question. The defendant characterizes the jury's question as one concerning the mental state "knowing" and asserts that in response to the question, the trial court should have given the jury the pattern instruction defining knowledge (IPI Criminal No. 5.01B). The defendant argues further that the response that was given was inadequate and potentially misleading.

Generally speaking, a jury need not be instructed on the term knowingly because that term has a plain meaning within the jury's common knowledge. People v. Powell, 159 Ill. App. 3d 1005, 1013, 512 N.E. 2d 1364, 1370 (1987). However, the trial court has a duty to instruct the jury further when clarification is requested, when the original instructions are insufficient or when the jurors are manifestly confused. People v. Reid, 136 Ill. 2d 27, 39, 554 N.E. 2d 174, 179 (1990). In responding to a jury question, the trial court must do so with specificity and accuracy. People v. Shaw, 186 Ill. 2d 301, 320, 713 N.E. 2d 1161, 1172 (1998). The trial court has discretion in determining how best to respond to a jury question. See Reid, 136 Ill. 2d at 38-39, 554 N.E. 2d at 179. We will review any such response for an abuse of discretion. See Reid, 136 Ill. 2d at 38-39, 554 N.E. 2d at 179.

Before we reach the merits of this issue, we must first determine whether the issue has been waived. It is well settled that to preserve an issue for appeal, a defendant must object at trial and must include the issue in a post-trial motion. People v. Enoch, 122 Ill.2d

6

176, 186, 522 N.E.2d 1124, 1130 (1988). The defendant acknowledges that the issue was not properly preserved--defense counsel did not make a contemporaneous objection to the response and acquiesced in the giving of the response--but argues that we should reach the merits of this issue as plain error.

The plain-error doctrine is a very narrow exception to the waiver rule and allows a reviewing court to reach a forfeited error in two limited circumstances: (1) where the evidence is close, regardless of the seriousness of the error, or (2) where the error is serious, regardless of the closeness of the evidence. People v. Herron, 215 Ill. 2d 167, 177-187, 830 N.E. 2d 467, 474-479 (2005). Before the plain error doctrine may be applied, however, it must first be shown that an error has occurred. People v. Wade, 131 Ill.2d 370, 376, 546 N.E.2d 553, 555 (1989). The burden is on the defendant. Herron, 215 Ill. 2d at 187, 830 N.E. 2d at 480.

In the present case, the defendant has failed to show that an error occurred. In reaching that conclusion, we note that we do not agree with the characterization given to the jury question by the defendant on appeal. This is not such a case as People v. Lowry, 354 Ill. App. 3d 760, 821 N.E. 2d 649 (2004), People v. Comage, 303 Ill. App. 3d 269, 709 N.E. 2d 244 (1999), or People v. Brouder, 168 Ill. App. 3d 938, 523 N.E. 2d 100 (1988), all cited by the defendant, where the jury specifically requested further instruction on the word "knowingly". To the contrary, the jury's question in the present case was clear. The jury wanted to know whether intent was required. The trial judge's response--that intent was not required and that the jury should follow all of the instructions that they had already been given--was equally clear and went no further than the question that was posed. Based on the question that was asked, the trial judge had no duty to instruct the jury further on the

7

term "knowingly". The response that was given was appropriate and did not constitute an abuse of discretion. Because no error occurred, the plain error doctrine does not apply and we must conclude that the issue has been waived.

As his second point of contention on appeal, the defendant argues that his trial counsel was ineffective for failing to offer the pattern jury instruction defining knowledge in response to the jury's question and in acquiescing in the trial court's response to the question. We review such claims de novo. See People v. Davis, 353 Ill. App. 3d 790, 794, 819 N.E. 2d 1195, 1200 (2004). A claim of ineffective assistance of counsel is analyzed under the two-pronged, performance-prejudice test established in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail on an ineffective-assistance claim, a defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial. People v. Patterson, 217 Ill. 2d 407, 438, 841 N.E. 2d 889, 907 (2005). The failure to satisfy either prong of the Strickland test precludes a finding of ineffective assistance of counsel. Patterson, 217 Ill. 2d at 438, 841 N.E. 2d at 907. Applying that standard in the present case, we find that defense counsel's performance was not deficient. As noted above, we have already determined that the jury's question did not require the trial judge to provide the jury with a definition of the term "knowingly" and that the trial judge's response to the question was appropriate. Defense counsel, therefore, was not deficient for acquiescing in that response or for failing to tender the pattern jury instruction defining knowledge. Having failed to establish deficient performance, defendant cannot show that his trial counsel was ineffective.

As his final point of contention on appeal, the defendant argues that the trial court

8

erred in admitting the prior testimony of Dr. Kirschener. Citing Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the defendant asserts that the admission of Dr. Kirschener's testimony violated the defendant's rights under the confrontation clause because the defendant did not have the opportunity to cross examine Dr. Kirschener about recent scholarship, namely a paper by Dr. Plunkett (defendant's expert opinion witness at trial) which was published after the first trial and was contrary to Dr. Kirschener's opinion testimony. We review the trial court's decision on the admissibility of evidence for an abuse of discretion. People v. Purcell, 364 Ill. App. 3d 283, 846 N.E. 2d 203, 211-212 (2006).

The sixth amendment's confrontation clause, which applies to both federal and state prosecutions, guarantees the accused the right to be confronted with the witnesses against him. Patterson, 217 Ill. 2d at 422-423, 841 N.E. 2d at 899. In Crawford, the Supreme Court reinterpreted the confrontation clause and held that the testimonial hearsay statements of a witness who is unavailable at trial may not be admitted against a criminal defendant unless the defendant had a prior opportunity for cross-examination. Patterson, 217 Ill. 2d at 423, 841 N.E. 2d at 899 (citing Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374).

The present defendant acknowledges that he had the opportunity to cross examine Dr. Kirschener at the first trial when the statement was made but argues that he was not given an opportunity for full cross examination because the paper by Dr. Plunkett had not been published until after the first trial. Thus, the defendant could not cross examine Dr. Kirschener about the paper at the time the original statement was made. We find this argument to be unpersuasive.

9

When the prior statement was given, the defendant had a full opportunity to cross examine Dr. Kirschener about the contrary opinion of Dr. Plunkett--the same contrary opinion that was later published. Crawford guarantees nothing more than that. See Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. If allowed to stand, the defendant's argument would prevent the admission of a prior statement, which is otherwise admissible under Crawford, merely because there had been some further development after the prior statement had been made. We do not believe that that is what was intended by the Crawford court. Thus, we conclude that the prior statement of Dr. Kirschener was properly admitted.

For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County convicting the defendant of first-degree murder.

Affirmed.

SCHMIDT, P. J. and SLATER, J. concurring.