THIRD DIVISION
March 31, 2008

No. 1-05-3495

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| WARREN AVERETT, | ) | Honorable |
| | ) | John Kirby, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Following a jury trial, defendant Warren Averett was found guilty of possession of a controlled substance with intent to deliver. Defendant was sentenced to eight years in prison and ordered to pay fines and fees, including a $2,000 controlled substance assessment (720 ILCS 570/411.2 (West 2004)). On appeal, defendant contends that: (1) he is entitled to a new trial where the State diminished its burden of proof and the presumption of innocence by making improper arguments; (2) he is entitled to a new trial where the circuit court failed to answer the jury's request for clarification; (3) he is entitled to a new trial where the circuit court's failure to rule on defendant's motion *in limine* to exclude evidence of defendant's prior convictions prevented defendant from making a knowing waiver of his right to testify; (4) his sentence is excessive; and (5) he is entitled to a $5-per-day credit toward his controlled substance assessment

for the 71 days defendant spent in pretrial custody. For the following reasons, we amend the cost and fees order and affirm defendant's conviction and sentence.

## I. BACKGROUND

Defendant was arrested on June 24, 2004, and charged with possession of a controlled substance with intent to deliver. Prior to trial, defendant filed a motion to quash arrest and suppress evidence. Following a hearing, the circuit court denied defendant's motion. Defendant also filed a motion *in limine* to preclude the State from using his prior convictions for impeachment purposes should defendant choose to testify. Defendant specifically sought to bar evidence of his convictions in 1999 for delivery of a controlled substance; in 1999 for possession of a controlled substance; and in 2000 for delivery of a controlled substance. The circuit court noted that defendant's prior convictions had all occurred within the past 10 years and, pursuant to our supreme court's determination in People v. Montgomery, 47 Ill. 2d 510 (1971), defendant's prior convictions would be "admissible for impeachment purposes in regards to truth and veracity." The court then stated that "the court's policy here is, I will not make a decision in regards to that until I hear the testimony of [defendant] and determine whether or not it becomes relevant to those three convictions." The court then reserved its ruling on the admissibility of defendant's three prior convictions until after it heard defendant's trial testimony and determined whether the prior convictions would be relevant.

At trial, Chicago police officer Lenny Pierri testified that at about 7:30 p.m., on June 24, 2004, he and his partner, Officer Mike Herman, were conducting narcotics surveillance in the alley in the vicinity of 3555 West Grand Avenue in Chicago. Officer Pierri explained that the area

included Grand, Central Park, and Drake Streets and was a neighborhood known to him for high narcotics sales. Officer Pierri testified that both officers were in plainclothes. Officer Pierri testified that he was the surveillance officer at the location and remained in radio contact with Officer Herman, who acted as the enforcement officer and waited in the police vehicle during the surveillance. Officer Pierri testified that he saw defendant standing alone in the middle of the alley. Officer Pierri testified that it was daylight and he had an unobstructed view of defendant. Officer Pierri observed an unidentified individual walk up to defendant and engage in a brief conversation with defendant. The unidentified individual then handed defendant money, which defendant placed in the front pocket of his pants. Defendant then walked over to a vehicle that was parked in the alley, opened the driver's-side door, and reached into the door panel. Defendant removed a small object from the door panel, walked back and handed the object to the unidentified individual. The unidentified individual then walked away from the area. Several minutes later, Officer Pierri observed a second unidentified individual walk up to defendant and engage in a similar transaction. Officer Pierri testified that these transactions lasted for about 1½ minutes and Officer Pierri conveyed the information to Officer Herman through the radio.

Shortly thereafter, Officer Pierri observed a white vehicle drive down the alley and stop near defendant. Defendant walked up to the driver and the driver handed defendant money. Defendant placed the money in the front pocket of his pants then walked over to the driver's-side door of the parked vehicle. Officer Pierri radioed Officer Herman and directed him to approach defendant. Officer Pierri then ran toward defendant, and the white vehicle drove away from the alley. As Officer Pierri approached, defendant was standing at the driver's door of the parked

vehicle with his back toward Officer Pierri. Defendant shut the vehicle's door, turned around and looked at Officer Pierri. Officer Pierri testified that defendant appeared startled and dropped a shiny, tinfoil object to the ground, which Officer Pierri believed to be packaged heroin.

Officer Herman drove up in the police vehicle and detained defendant. Officer Pierri recovered the item from the ground. Officer Pierri testified that the tinfoil contained a "tannish" colored powder that he believed to be heroin. Officer Herman approached the driver's door of the parked vehicle. Officer Pierri then walked over to the car door and recovered six tinfoil packet of suspected heroin, which appeared similar to the item he retrieved from the ground.

Officer Pierri noted that in his experience as a police officer, he came in contact with heroin most frequently during his 400 to 600 previous narcotics arrests. Officer Pierri testified that based on his experience in the area of Grand and Central Park, in June of 2004, heroin was packaged in tinfoil packets and usually sold for $20 a tinfoil packet. Officer Pierri testified that he kept the items that he recovered from the ground and from the parked vehicle driver's door on his person until he arrived at the police station. Officer Pierri then gave the items to Officer Herman, who inventoried them

Officer Mike Herman testified in a similar manner as Officer Pierri, adding that after defendant was placed into custody, he performed a custodial search and recovered $60 from the pocket of defendant's pants. Officer Herman testified that he inventoried the recovered money. Officer Herman then explained the inventory process. The parties stipulated that Officer Herman inventoried the recovered seven items of suspected heroin and that a proper chain of custody was maintained at all times over the recovered items. The parties also stipulated that forensic chemist

Penny Evans from the Illinois State Police crime laboratory would qualify as an expert in the area of forensic chemistry and that she found the total estimated weight of the seven items to be 3.9 grams. The parties further stipulated that Evans tested three items and found them positive for the presence of heroin in the amount of 1.7 grams.

Defendant made a motion for a directed finding, which the circuit court denied. Defendant did not present any witnesses or evidence. Defense counsel informed the circuit court that defendant was waiving his right to testify. Defense counsel stated:

> "The defendant does not want to avail himself of his legal right to testify in light of not having some assurance up front that his prior [convictions] won't be used to impeach him. He doesn't want to take the risk that the ruling will be adverse, three priors will come in and he will testify in front of the jury and they will be informed that he has three prior felony convictions. He doesn't want to run the risk of them discovering that, so he's not going to testify in the first instance."

The circuit court then admonished defendant that it was his decision alone whether or not to testify and asked defendant if he understood that he had the right to testify. Defendant indicated that he understood his right to testify, was satisfied with his discussion with defense counsel regarding his right, and his decision was not to testify.

Following closing arguments, the circuit court instructed the jury as to the law. The jury began deliberations at 6:30 p.m., on July 19, 2005. At 7:15 p.m., the jury sent a note to the court asking, "Where is the $60 found on the defendant? Why was this not submitted as evidence?" and "Clarify the charges of intent to sell defined by the Court?" With the parties' agreement, the

circuit court sent the jury a response stating, "You have heard all of the testimony and received all of the evidence and the instructions on the law. Please continue to deliberate." At 8:30 p.m., the jury returned a verdict of guilty of possession of a controlled substance with intent to deliver.

At defendant's sentencing hearing, the State argued in aggravation that defendant should be sentenced as a Class X offender based on the fact that two of his prior four narcotics convictions were for Class 2 felonies. In mitigation, defense counsel argued that defendant was 47 years old and had done productive things in his life. Defense counsel argued that defendant was temporarily separated from his wife, but lived with her on and off, and that defendant had four children. Defense counsel argued that defendant had educational experience, including college and vocational training, and that defendant had worked gainfully in the past as an ironworker. Defense counsel argued that defendant had a drug addiction, which included heroin, and that defendant was a "small-time street hustler" to support his drug addiction. Defense counsel argued that defendant successfully completed TASC probation in 2003, but had a period of backsliding. Following these arguments, the circuit court sentenced defendant to eight years in prison. In doing so, the court noted that defendant had four prior felony convictions and that he had received probation in the past and had violated his probation in two of those cases. The court stated that it was not going to sentence defendant as a Class X offender because the evidence was not sufficient to establish that defendant's second previous conviction was a Class 2 felony. The court stated that it would sentence defendant within the bounds of the Class 1 felony, 4 to 15 years in prison, for which defendant was found guilty. In addition to defendant's eight-year prison sentence, the court ordered defendant to pay various fines and fees, including a $2,000

controlled substance assessment.

## II.  ANALYSIS

### A.  The State's Rebuttal Argument

Defendant first contends that the State improperly diminished its burden of proof and defendant's presumption of innocence by making improper remarks during its rebuttal closing argument.  Defendant argues that these errors were reinforced where defendant's objections were overruled and the jury received an incorrect verdict form.

Initially, the State contends that any objection to the prosecutor's statements during rebuttal closing argument was forfeited due to defendant's failure to raise the issues in his posttrial motion.

"To preserve claimed improper statements during closing argument for review, a defendant must object to the offending statements both at trial and in a written posttrial motion." People v. Wheeler, 226 Ill. 2d 92, 122 (2007), citing People v. Enoch, 122 Ill. 2d 176, 186 (1988).  After reviewing defendant's posttrial motion, we find that defendant failed to properly preserve the prosecutorial misconduct issues he raises on appeal.

 Defendant maintains that to the extent that these errors were waived, we should review the issue under the plain-error doctrine.  The plain-error doctrine allows this court to address an unpreserved error when either (1) the evidence was closely balanced, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence.  People v. Herron, 215 Ill. 2d 167, 178 (2005).  Defendant contends that the plain-error doctrine should apply because the jury was misinformed regarding the burdens and presumptions in this case.  We

1-05-3495

disagree.

Prosecutors are afforded wide latitude in closing argument. People v. Wheeler, 226 Ill. 2d 92, 123 (2007). The trial court's determination that closing arguments were proper will be upheld absent an abuse of discretion. People v. Love, 377 Ill. App. 3d 306, 313 (2007). Prosecutorial misconduct warrants reversal only if it caused substantial prejudice to the defendant, taking into account the content and context of the comments, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. Love, 377 Ill. App. 3d at 313. A prosecutor's comments during rebuttal argument will not be deemed improper, however, if they were invited by defense counsel's closing argument. Love, 377 Ill. App. 3d at 313.

Defendant argues that, during rebuttal argument, the prosecutor eliminated its burden of proof beyond a reasonable doubt and instructed the jury to find defendant guilty if defendant's guilt seemed "reasonable" or complied with "common sense." The record shows the prosecutor argued:

"It's a burden that is met in this courthouse every day. It's a burden that is met across this state in courtrooms every day. It's a burden that is met across the country every day. It's a burden beyond a reasonable doubt. And when you consider the word 'reasonable,' all that implies, as Counsel suggested, was your common sense. Based on your reasonable beliefs and common sense, did the State prove the defendant on June 24th, possessed those seven bags with the intent to deliver them."

Our supreme court has held that a prosecutor's comment that the burden of proof beyond a reasonable doubt was " 'not unreasonable' " and " 'met each and every day in courts' " does not

-8-

reduce the State's burden or shift the burden to defendant. People v. Bryant, 94 Ill. 2d 514, 523-24 (1983). In People v. Laugharn, 297 Ill. App. 3d 807 (1998), this court held that it was not improper when the prosecutor argued:

> " 'Now, we must prove to you the elements of this offense of first degree murder and all of these elements beyond a reasonable doubt. *Now, that's not beyond all doubt or any doubt, but beyond a reasonable doubt. A doubt with some reason to it. Now, that's not some mythical, unattainable standard that can't be met.* It's met in courtrooms throughout the country every day, and we've met [it] in here in this courtroom this week.' " (Emphasis in original.) Laugharn, 297 Ill. App. 3d at 810.

In Laugharn, this court found that the prosecutor's statements did not rise to the level of plain error because the statements did not deprive the defendant of a fair trial or undermine the entire trial. Laugharn, 297 Ill. App. 3d at 812. This court explained that "[t]he average jury understands the concept of reasonable doubt and is not contaminated when it hears the prosecutor say that *reasonable* doubt has *reason* behind it, and is an attainable standard, which incidentally, are accurate statements." Laugharn, 297 Ill. App. 3d at 812 (Emphasis in original).

Similarly, in People v. Ward, 371 Ill. App. 382, 422-23 (2007), this court held that the prosecutor's comments that reasonable doubt did not mean " 'guilty beyond all doubt or a shadow of a doubt' " and that it was " 'a burden that is met everyday in every courtroom' " were proper comments. We therefore find the similar remarks in this case to be within the legitimate bounds of argument.

In addition, we find that the prosecutor's comments during rebuttal argument were invited

by defense counsel's closing argument. During closing argument, defense counsel referred to the use of "common sense" numerous times. Defense counsel argued, "This is a case about common sense. Please don't leave it at home. Bring it back with you to the jury room." Defense counsel told the jury, "[u]se your common sense" in evaluating Officer Pierri's testimony that defendant dropped narcotics to the ground in front of the officer. Defense counsel also argued:

"Use the law that the judge gives you, and then decide if the defendant *** has been proven guilty beyond a reasonable doubt. That is what your job is.

And it's a commonsense business. You are to use your everyday experiences in life. Do not leave them outside the courtroom. Bring them with you. Deci[de] what is reasonable. Decide what ordinarily happens. What is normal."

The prosecutor's comments during rebuttal argument responded directly to defense counsel's argument that the evidence defied "common sense" and supported reasonable doubt. Accordingly, we find the prosecutor's challenged comments were not improper. See Love, 377 Ill. App. 3d at 313-14.

Defendant next contends that the prosecutor's comments during rebuttal argument also undermined the presumption of innocence in this case. The record shows that the prosecutor argued:

"You will get instructions from Judge Kirby regarding when you go back and deliberate on the issue of possession of a controlled substance with intent to deliver. There are three possible outcomes you can have.

He will instruct you that you can find the defendant guilt[y] of possession of a

controlled substance with intent to deliver ***.

You can find him guilty of the offense of possession of a controlled substance, or you can find him not guilty of either kind. But in those instructions it's important to bear in mind your initial foc[us] is the charge of possession of a controlled substance with intent to deliver. You don't even get to the issue of possession of a controlled substance alone. Unless you do not find that [defendant] didn't have the intent to deliver these bags.

You will get instructions from the Judge that if you find that he had an intent to deliver these, under that circumstance you don't even move on to straight possession of a controlled substance. You're done at that point."

Defense counsel then objected and stated "that's not what your instruction 2.01(q) is going to say." The circuit court informed the jurors that it would read the instructions to them and that the jurors would receive the instructions when they returned to the jury room.

Defendant contends that the prosecutor's comments improperly instructed the jury to start deliberations by focusing on possession of a controlled substance with intent to deliver before considering simple possession or defendant's possible innocence. Defendant does not maintain that the prosecutor misstated the three possible verdicts in this case but, rather, that the prosecutor improperly instructed the jury to consider the most serious charge before considering defendant's innocence.

Contrary to defendant's arguments, nothing in the record indicates that the prosecutor informed the jury to disregard the presumption of innocence in this case. In addition, the circuit court promptly admonished the jury that it would be instructed as to the law to be applied. The

-11-

record shows that the circuit court provided the following instructions, in relevant part:

"The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

The court also instructed the jury regarding the three possible verdicts in the case: not guilty of possession of a controlled substance with intent to deliver and not guilty of possession of a controlled substance; guilty of possession of a controlled substance with intent to deliver; and guilty of possession of a controlled substance. We find that any improper statement by the prosecutor relating to the presumption of innocence and possible verdicts in this case was cured by the circuit court's prompt admonition and instructions to the jury. See People v. Moreno, 238 Ill. App. 3d 626, 636 (1992) (prosecutor's erroneous statement during closing argument was harmless where the trial court admonished the jury that it would "instruct the jury as to the law" and later did properly instruct the jury on the law).

Defendant also argues that the presumption of innocence was diminished where the jury received an erroneous verdict form. Defendant maintains that when Illinois Pattern Jury Instructions, Criminal, No. 26.01Q (4th ed. 2000) (IPI Criminal 4th No. 26.01Q) is given, as in this case, the not guilty verdict form must be a general one and should not specify the title of each

1-05-3495

offense under consideration.

IPI Criminal 4th No. 26.01Q contains the "Concluding Instruction" to be given when the jury is to be instructed on one or more charges including lesser included offenses. Contrary to defendant's contention, the Committee Note to IPI Criminal 4th No. 26.02 does not specifically require that a general not guilty verdict form be used when the jury is instructed pursuant to IPI Criminal 4th No. 26.01Q. The Committee Note states: "A general not guilty verdict form should generally be used, and must be used in certain situations. *** Specific not guilty verdict forms, however, must be used in certain other situations. *** In all cases, the form of the not guilty verdict should follow the directions contained in an applicable instruction from the 26.01 series." IPI Criminal 4th No. 26.02, Committee Note, at 452. The Committee Note does not state that a general guilty verdict must be used in this situation and nothing in IPI Criminal 4th No. 26.01Q required a general not guilty verdict form.

In addition, the jury was instructed in this case pursuant to IPI Criminal 4th Nos. 17.17 and 17.18, the definition and issues instructions for the charge of possession of a controlled substance with intent to deliver, and IPI Criminal 4th Nos. 17.27 and 17.28, the definition and issues instruction for the lesser included offense of possession of a controlled substance. Each of the definition and issues instructions included the same quantity language, "1 gram or more but less than 15 grams." The Committee Note to IPI Criminal 4th No. 17.17 provides: "Although the quantity may not always be required in the verdict forms ***, to insure clarity the Committee recommends that each verdict form contain the same quantity language used in the definitional and issues instructions supporting the verdict." IPI Criminal 4th No. 17.17, Committee Note, at

-13-

1-05-3495

329. Therefore, in this case, the verdict forms were not erroneous where each form, including the not guilty verdict form, contained the same quantity language as in the definition and issue instructions. Accordingly, we find that the alleged errors do not rise to the level of plain error.

Defendant further argues that defense counsel's failure to preserve the issues regarding the prosecutor's alleged improper comments constituted ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney committed such serious errors as to fall beyond an objective standard of reasonableness, and that, without those objectively unreasonable errors, there was a reasonable probability that his trial would have resulted differently. Ward, 371 Ill. App. 3d at 434, citing Strickland v. Washington, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984). "A finding that one component has not been satisfied is fatal to defendant's claim as a whole." Love, 377 Ill. App. 3d at 310.

Defendant argues that trial counsel's failure to preserve the errors relating to the prosecutor's statements about the burden of proof and the presumption of innocence was objectively unreasonable and highly prejudicial to defendant. However, as this court demonstrated above, these arguments were not improper and did not rise to the level of plain error. See Ward, 371 Ill. App. 3d at 436 (defense counsel's actions were not objectively unreasonable in failing to object to proper comments by the prosecutor during closing argument and even if the comments were improper, they would have been harmless and Strickland's second prong would not have been met).

B. Response to the Jury's Question

-14-

Defendant next contends that he is entitled to a new trial where the circuit court improperly responded to the jury's question. Defendant characterizes the jury's question as one concerning the legal definition of "intent" and asserts that in response to the question, the circuit court should have given the jury the definition of "intent."

The record shows that less than an hour after the jury began to deliberate, the following questions were sent to the circuit court: "Where is the $60 found on the defendant? Why was this not submitted as evidence?" and "Clarify the charges of intent to sell defined by the Court?"

The record shows that the circuit court provided both the State and defense counsel the opportunity to respond to the jury's question. Both parties agreed to the circuit court's response stating, "You have heard all of the testimony and received all of the evidence and the instructions on the law. Please continue to deliberate." Where the defendant acquiesces in the answer given by the circuit court to the jury's question, the defendant cannot later complain that the circuit court abused its discretion. Love, 377 Ill. App. 3d at 316, citing People v. Reid, 136 Ill. 2d 27, 38 (1990). Moreover, if the defendant fails to object at trial or to raise the issue in his posttrial motion, as in this case, the issue is waived for appellate review. Reid, 136 Ill. 2d at 38. We find the issue is waived. However, even if we reviewed the issue under the plain-error rule, we find no abuse of discretion by the circuit court. See People v. Sanders, 368 Ill. App. 3d 533, 537 (2006) (before the plain-error doctrine may be applied, it must first be shown that an error has occurred, and the burden is on the defendant).

Generally, jurors are entitled to have their questions answered. Reid, 136 Ill. 2d at 39. A circuit court has a duty to instruct the jury where clarification is requested, when the original

-15-

1-05-3495

instructions are insufficient or when the jurors are manifestly confused. Sanders, 368 Ill. App. 3d at 537, citing Reid, 136 Ill. 2d at 39. Nevertheless, under the appropriate circumstances, a circuit court may decline to answer a jury's question if the jury instructions are readily understandable and sufficiently explain the relevant law, further instructions would serve no useful purpose, further instructions would potentially mislead the jury, and the jury's inquiry involves a question of fact. Reid, 136 Ill. 2d at 39. A circuit court may also refuse to answer an inquiry by a jury if the jury's question is ambiguous and any response to the question may require " 'a colloquy between the court and the jury, a further explanation of the facts, and perhaps an expression of the trial court's opinion on the evidence.' " Reid, 136 Ill. 2d at 39-40, quoting People v. Tostado, 92 Ill. App. 3d 837, 839 (1981). The circuit court has discretion in determining how best to respond to a jury question, and this court will review any such response for an abuse of discretion. Sanders, 368 Ill. App. 3d at 537, citing Reid, 136 Ill. 2d at 38-39.

In the present case, we find that defendant has failed to show that an error occurred. In reaching that conclusion, we disagree with the characterization given to the jury question by the defendant on appeal. This is not such a case as People v. Lowry, 354 Ill. App. 3d 760 (2004), People v. Comage, 303 Ill. App. 3d 269 (1999), or People v. Brouder, 168 Ill. App. 3d 938 (1988), all cited by defendant, where the jury specifically requested further instruction on the word "knowingly." This case also differs from People v. Crockett, 314 Ill. App. 3d 389 (2000) where the jury requested a definition of the word "abet," and People v. Landwer, 279 Ill. App. 3d 306 (1996), where the jury requested the definition of the term "originated" as used in the context of an entrapment instruction.

In contrast to these cases relied on by defendant, the jury's question in the present case did not ask for the definition of a specific term. Rather, the jury asked for clarification of "the charges of intent to sell defined by the Court." In <u>Reid</u>, the jury sent a note to the circuit court asking whether it could find the defendant guilty of one charge but not the other. <u>Reid</u>, 136 Ill. 2d at 34. The parties agreed to the circuit court's response instructing the jury to continue its deliberations on the basis of the instructions it had previously received. <u>Reid</u>, 136 Ill. 2d at 34. Our supreme court found that the circuit court did not abuse its discretion in its response where both parties agreed to the response, the jury had received a complete set of written instructions, and the circuit court determined that the jury was not manifestly confused and that the written instructions were sufficient to settle any confusion the jury had displayed. <u>Reid</u>, 136 Ill. 2d at 38-40.

Also, in <u>People v. Hernandez</u>, 229 Ill. App. 3d 546 (1992), this court addressed the circuit court's response to a jury question. In <u>Hernandez</u>, during deliberations in the defendant's trial for armed violence and possession of a controlled substance, the jury sent a note to the court stating " 'Need to have further definition/clarification on a dangerous weapon where he carries on or about his person or is otherwise armed.' " <u>Hernandez</u>, 229 Ill. App. 3d at 552. The circuit court responded " 'You have my instructions on this issue. Please reread them and continue to deliberate.' " <u>Hernandez</u>, 229 Ill. App. 3d at 552. This court initially found that the defendant had waived the issue for review where both parties had agreed that further instructions were unnecessary. <u>Hernandez</u>, 229 Ill. App. 3d at 553. This court then determined that even if it considered the issue under the plain-error rule, it would find no abuse of discretion by the circuit court where the circuit court found the jury's question to be ambiguous and further instructions

would risk misleading the jury. Hernandez, 229 Ill. App. 3d at 553.

Further, in People v. Salazar, 211 Ill. App. 3d 899 (1991), this court found no abuse of discretion in the circuit court's response to the jury's question. In Salazar, the defendant was charged with possession of more than 30 grams of a controlled substance with intent to deliver. Salazar, 211 Ill. App. 3d at 903. During its deliberations, the jury sent a note to the circuit court stating, " 'Does the charge possession of a controlled substance with the intent to deliver, just the way the law is written,' " and " 'or is possession of a controlled substance separate with the intent to deliver?' " The circuit court responded that the applicable law was contained in the jury instructions and that the jury should continue to deliberate. Salazar, 211 Ill. App. 3d at 912. On appeal, this court found that the circuit court properly declined to answer the jury's question where the question was addressed apparently to the elements of the offense and the jury had been clearly instructed as to those elements in the language of the statute. Salazar, 211 Ill. App. 3d at 912-13, citing Reid, 136 Ill. 2d at 39-40.

Following the reasoning in these cases, here, the jury's question addressed clarification "of the charge of intent to sell defined by the Court." The jury received a complete set of written instructions regarding the charged offense and the lesser included offense. The circuit court apparently determined that the jury was not manifestly confused. The court also determined, and the parties agreed, that the written instructions answered the jury's question in this case. Based on the question that was asked, we find that the circuit court had no duty to instruct the jury on the definition of "intent." We conclude that the response that was given was appropriate and did not constitute an abuse of discretion. Accordingly, because no error occurred, the plain-error

doctrine does not apply and we find that the issue has been waived.

Defendant also contends that trial counsel was ineffective for failing to offer the pattern jury instruction defining "intent" in response to the jury's question. Applying the Strickland standard, we find that defense counsel's performance in this regard was not deficient.

IPI Criminal 4th No. 5.01A provides a definition of "intent" as, "A person [acts with intent] to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct." The Committee Note explains that in view of People v. Brouder, 168 Ill. App. 3d 938 (1988), "the Committee believes its presence in this edition is now necessary. In Brouder, the court found reversible error in the trial court's refusal to define the word 'knowingly' when the jury had twice specifically requested a definition and reported its confusion regarding that word. There is no reason to believe the result in Brouder would have been different had the word 'intent' been at issue." IPI Criminal 4th No. 5.01A, Committee Note, at 141. Defendant cites this Committee Note and this court's determination in Lowery, 354 Ill. App. 3d at 767-68, in support of his argument that defense counsel was ineffective for failing to offer IPI Criminal 4th No. 5.01A in response to the jury's question.

However, the Committee Note to IPI Criminal 4th No. 5.01A also states: "The Committee takes no position as to whether this definition should be routinely given in the absence of a specific jury request." IPI Criminal 4th No. 5.01A, Committee Note, at 141. In making this statement, the Committee cited People v. Powell, 159 Ill. App. 3d 1005 (1987), in which this court stated that the words " 'intentionally' and 'knowingly' have a plain meaning within the jury's common understanding." IPI Criminal 4th No. 5.01A, Committee Note, at 141. In addition, as

previously discussed, in <u>Lowery</u> and <u>Brouder</u>, the jury specifically requested further instruction on the word "knowingly," whereas, in the present case, the jury did not specifically request a definition of the word "intent" or exhibit confusion about the word.

Further, in <u>Sanders</u>, this court recently determined that the circuit court was not required to provide the jury with a definition of the term "knowingly" where the jury's question concerned whether intent was required in determining whether the defendant, in performing acts that caused the death of the victim, knew that his acts created a strong probability of death or great bodily harm to the victim. <u>Sanders</u>, 368 Ill. App. 3d at 536-38. This court found no abuse of discretion by the circuit court where the court responded that intent was not required and that the jury should follow all of the instructions that it had already been given. This court noted that the circuit court's response went no further than the question posed by the jury, that the term "knowingly" had a plain meaning, and the question did not suggest any confusion by the jury on the term "knowingly" to warrant further instruction. <u>Sanders</u>, 368 Ill. App. 3d at 538. This court also rejected the defendant's argument that trial counsel was ineffective for failing to offer the jury pattern instruction defining "knowledge" in response to the jury's question where the jury's question did not require the circuit court to provide a definition of the term and the court's response to the question was appropriate. <u>Sanders</u>, 368 Ill. App. 3d at 538. Similarly, in this case the jury's question did not request a definition of the term "intent" or display any confusion about the meaning of that term. As previously noted, the circuit court was not required to provide the jury with a definition of the term "intent" and did not abuse its discretion in responding to the jury's question. Defense counsel, therefore, was not deficient for failing to tender IPI Criminal

4th No. 5.01A. Having failed to show deficient performance, defendant cannot establish that his trial counsel was ineffective. See Love, 377 Ill. App. 3d at 310.

### C. Defendant's Motion *In Limine*

Defendant next contends that the circuit court abused its discretion by refusing to rule on defendant's motion *in limine* to bar the use of his prior convictions until the court heard defendant's testimony.

In People v. Montgomery, 47 Ill. 2d 510, 516 (1971), our supreme court considered Federal Rule of Evidence 609 in holding that evidence of a prior conviction may be admitted to impeach a witness when the following three conditions are met: (1) the prior conviction was punishable by death or imprisonment in excess of one year, or was a crime involving dishonesty or false statement; (2) the date of conviction or the date of release of the witness from confinement, whichever is later is not more than ten years prior to trial; and (3) the trial court in its discretion must determine that the probative value for impeachment purposes of the prior conviction outweighs any unfair prejudice its admission may have for the defendant. In performing the balancing test, a circuit court is to consider:

> " ' "The nature of the prior crimes, *** the length of the criminal record, the age and circumstances of the defendant, and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." ' " Montgomery, 47 Ill. 2d at 518, quoting Proposed Fed. R. Evid. 609 Advisory Committees' Note, quoting Luck v. United States, 348 F. 2d 763, 769 (D.C. Cir. 1965).

1-05-3495

Here, because the circuit court refused to engage in the Montgomery balancing test until defendant testified, defendant contends he opted not to testify and now argues that the refusal of the circuit court to rule prevented him from making a knowing and intelligent decision as to whether to exercise his right to testify.

The defendant's right to testify is a fundamental constitutional right, as is his right to choose not to testify. People v. Madej, 177 Ill. 2d 116, 145-46 (1997); Rock v. Arkansas, 483 U.S. 44, 51, 97 L. Ed. 2d 37, 46, 107 S. Ct. 2704, 2708 (1987). The decision whether to testify ultimately rests with the defendant. People v. Campbell, 208 Ill. 2d 203, 210 (2003).

In this case, the circuit court declined to rule on the motion *in limine* prior to defendant testifying, and defendant decided not to testify. The record shows that defendant indicated to the court that he understood that the decision whether or not to testify was his alone, that he was satisfied with his discussion with defense counsel regarding his right, and his decision was not to testify. The United States Supreme Court has held that a defendant who does not testify at trial is not entitled to appellate review of a trial court's ruling denying a motion *in limine* seeking to forbid the use of prior convictions for impeachment purposes because the argument of possible harm from the ruling on the motion is wholly speculative. Luce v. United States, 469 U.S. 38, 41, 83 L. Ed. 2d 443, 447, 105 S. Ct. 460, 463 (1984). The Court explained, "Were in limine rulings under Rule 609(a) reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." Luce, 469 U.S. at 42, 83 L. Ed. 2d at 448, 105 S. Ct. at 463-64.

The same reasoning has been applied by our appellate courts where a circuit court has not made a ruling on a motion *in limine* seeking to exclude evidence of a defendant's prior convictions under the holding in Montgomery. See People v. Owen, 299 Ill. App. 3d 818, 824-25 (1998) (the circuit court's refusal to rule on defendant's motion *in limine* becomes an issue only after the defendant has testified and the State seeks to introduce his prior convictions for impeachment purposes); See People v. Mims, 204 Ill. App. 3d 87, 96 (1990) (declining to address the merits of the argument where defendant did not testify and the no-ruling issue is "academic"); See People v. Rose, 75 Ill. App. 3d 45, 53 (1979) (the circuit court was not required to rule on defendant's motion to exclude his prior convictions until defendant testified); See People v. Hunter, 61 Ill. App. 3d 588, 597-98 (1978) (the circuit court may withhold its ruling upon whether evidence of particular convictions of a defendant may be used to impeach him until after the defendant has testified); *See* People v. Barksdale, 24 Ill. App. 3d 489, 496 (1974) (the circuit court should have discretion to withhold ruling on defendant's motion to exclude prior convictions until after the defendant has testified).

"A motion *in limine* is addressed to the trial court's inherent power to admit or exclude evidence. A court of review will not reverse a trial court's grant or denial of a motion *in limine* absent a clear abuse of discretion. [Citations.]. However, a trial court must exercise its discretion within the bounds of the law. Where a trial court's exercise of discretion has been frustrated by an erroneous rule of law, appellate review is required to permit the exercise of discretion consistent with the law. People v. Brockman, 143 Ill. 2d 351, 363 (1991)." People v. Williams, 188 Ill. 2d 365, 369 (1999).

1-05-3495

As Justice Steigmann explained in <u>People v. Owen</u>, 299 Ill. App. 3d 818 (1998), "Motions *in limine* are designed to call to the attention of a trial court, in advance of trial, some evidence which, because of its potentially prejudicial nature, cannot be discussed in the jury's presence until the court has determined it is admissible. \*\*\*. As a result, motions *in limine* often achieve great savings of time and judicial efficiency, and resolving a difficult evidentiary issue prior to trial sometimes results in settlement or a guilty plea. In criminal cases like this, a preliminary ruling on the admissibility of a defendant's prior convictions for the purpose of impeaching him would assist the defendant and his counsel in deciding whether defendant wishes to testify and, if so, whether defense counsel should bring out such convictions during direct examination in the hope that his doing so might diminish their negative impact." <u>Owen</u>, 299 Ill. App. 3d at 822-23. Refusing to rule in advance prevents the defendant from making such an anticipatory disclosure. <u>People v. DeBerry</u>, 375 Ill. App. 3d 822, 828 (2007) (Cook, J., dissenting).

In <u>People v. Ballard</u>, 346 Ill. App. 3d 532, 543 (2004), this court held that the circuit court's refusal to rule on the defendant's motions *in limine* related to <u>Montgomery</u> was non-reviewable. However, the <u>Ballard</u> court went on to criticize the circuit court's refusal to rule, concluding "the court should have ruled and then defendant could meaningfully consider whether to exercise his right to testify." <u>Ballard</u>, 346 Ill. App. 3d at 544-45. As in the present case, <u>Ballard</u> involved the admissibility for impeachment purposes of a prior conviction for possession of a controlled substance with intent to deliver, in a case where the defendant was charged with an identical offense.

Recently, in <u>People v. Phillips</u>, 371 Ill. App. 3d 948 (2007), *appeal allowed*, 224 Ill. 2d

588 (2007), this court again addressed the issue where the circuit court refused to rule on the defendant's motion *in limine* to bar his prior convictions until the defendant testified. This court determined that based on the particular facts of the case, the circuit court abused its discretion when it refused to rule without first hearing the defendant's direct examination. Phillips, 371 Ill. App. 3d at 952. In Phillips, the defendant was charged with armed violence and aggravated battery and sought to bar use of his prior convictions for the same offenses to attack his credibility when he testified. This court noted that the defendant's state of mind was a material issue for his affirmative defense of self-defense and that only the defendant could provide direct evidence of his reasons for stabbing the victim. This court explained that by the time defense counsel renewed his motion to bar the prior convictions, the issues to be decided by the jury were clearly drawn, where the court had heard opening statements, cross-examination of the State's witnesses, and the testimony of two defense eyewitnesses. Phillips, 371 Ill. App. 3d at 952. This court explained:

> "We cannot fathom what more the judge needed in order to conduct the balancing
> test and rule on the admissibility of the prior convictions. The defendant was deprived of
> the information he needed to make an informed and intelligent decision about whether to
> testify." Phillips, 371 Ill. App. 3d at 952.

Here, defendant argues that we should follow the reasoning in Phillips, and conclude that the circuit court's refusal to rule was an abuse of discretion.

In the instant case, the circuit court stated that "the court's policy" was to decline to rule on defendant's motion *in limine* until after it heard defendant's testimony. Courts should not adopt such a blanket policy, but, rather should engage in the Montgomery balancing test on a

case-by-case basis, giving thoughtful consideration to each factor. It is a matter of simple fairness that courts should rule on such motions as soon as is practicable. As this court explained in Phillips: "There may be times when a trial court cannot effectively conduct the Montgomery balancing test without hearing the defendant's direct testimony, although it is difficult to envision that happening with any frequency. In most cases, as was true in this case, the judge will have heard enough or been told enough to find the issue ripe for decision." Phillips, 371 Ill. App. 3d at 952-53; also see Luce, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463 (knowing the precise nature of the defendant's testimony assists in conducting the balancing test required under Federal Rule 609(a)(1) (Fed. R. Evid. 609(a)(1)).

Here, defendant's motion *in limine* was addressed to two convictions for delivery of a controlled substance and a conviction for possession of a controlled substance. The prejudicial effect of the use of those convictions for impeachment is obvious. When defense counsel informed the circuit court that defendant would not testify due to the circuit court's refusal to rule on defendant's motion *in limine*, the court had already heard defendant's testimony at the pretrial hearing on his motion to suppress, opening statements, as well as the testimony and cross-examination of the State's witnesses. Even more so than in Phillips, it is abundantly clear that the circuit court had all the information needed in order to conduct the Montgomery balancing test and rule on the admissibility of defendant's prior convictions.

This panel of the appellate court has collectively served more than 50 years in either the criminal division of the circuit court of Cook County or on the Illinois Appellate Court. During that period of time, we have considered the Montgomery balancing test on literally hundreds of

occasions. On none of these occasions did the circuit court refuse to rule on a defendant's motion *in limine* based on <u>Montgomery</u>. We are concerned that there is a developing trend in the circuit court of Cook County to refuse to rule on such motions. We agree with the concerns expressed by the <u>Ballard</u> and <u>Phillips</u> courts that the refusal by a circuit court to rule deprives a defendant of information needed to make an informed and intelligent decision about whether to testify.

Nonetheless, we conclude that defendant's failure to testify eliminates the circuit court's refusal to rule as a reviewable issue. " 'The doctrine of *stare decisis* expresses the policy of the courts to stand by precedents and not to disturb settled points. [Citation.] ' " <u>Phillips</u>, 371 Ill. App. 3d at 954, quoting <u>People v. Sharpe</u>, 216 Ill. 2d 481, 519 (2005), quoting <u>Vitro v.Mihelcic</u>, 209 Ill. 2d 76, 81-82 (2004). Despite our disapproval of the circuit court's policy not to rule on a defendant's motion *in limine* until after a defendant testifies, we find no reason to depart from this court's previous determinations that a defendant's failure to testify eliminates a circuit court's refusal to rule as a reviewable issue. See <u>Phillips</u>, 371 Ill. App. 3d at 953-54; <u>Ballard</u>, 346 Ill. App. 3d at 543; <u>Owen</u>, 299 Ill. App. 3d at 824-25; <u>Mims</u>, 204 Ill. App. 3d at 96; <u>Rose</u>, 75 Ill. App. 3d at 53; <u>Hunter</u>, 61 Ill. App. 3d at 597-98; <u>Barksdale</u>, 24 Ill. App. 3d at 496. We note that when the circuit court rules on a defendant's motion *in limine* and allows the State to impeach the defendant with his prior convictions, the issue remains unreviewable if the defendant does not testify. See <u>People v. Steward</u>, 295 Ill. App. 3d 735, 748-49 (1998) (a defendant cannot appeal the circuit court's ruling on a motion *in limine* where the circuit court stated that it would allow the State to impeach the defendant at trial with a prior conviction if the defendant did not testify at trial). This was also the holding in <u>Luce</u>, where the United States Supreme Court reviewed the

1-05-3495

trial court's denial of the defendant's motion *in limine*. Luce, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463.

### D. Sentencing

Defendant next contends that his sentence of eight years in prison was excessive where the circuit court failed to consider defendant's lack of a significant criminal background; defendant's rehabilitative potential; and the small amount of narcotics involved in this case.

In determining a sentence, a trial court must analyze the acts constituting the crime and a defendant's credibility, demeanor, general moral character, mentality, social environments, habits, age, and potential for rehabilitation. People v. Ramos, 353 Ill. App. 3d 133, 137 (2004). However, because the trial court is in a better position to judge the credibility of the witnesses and the weight of the evidence at the sentencing hearing, its decision is entitled to great deference and will not be overturned even if we may have balanced the factors differently. Ramos, 353 Ill. App. 3d at 137. In addition, whenever a sentence falls within the statutorily mandated guidelines, we presume it to be proper and will not overturn it unless there is an affirmative showing that the sentence varies greatly from the purpose and the spirit of the law, or is manifestly disproportionate to the nature of the offense. Ramos, 353 Ill. App. 3d at 137; People v. Stewart, 365 Ill. App. 3d 744, 752 (2006).

Defendant was convicted of the offense of possession of a controlled substance with intent to deliver 1 gram or more but less than 15 grams of heroin, a Class 1 felony. 720 ILCS 570/401(c)(1) (West 2004). The sentencing range for a Class 1 felony is between 4 to 15 years in prison. 730 ILCS 5/5-8-1(a)(4) (West 2004). We find that the circuit court acted well within its

-28-

discretion in imposing a sentence in the middle of the statutory range.

With regard to defendant's contentions that the circuit court failed to consider defendant's rehabilitative potential and lack of a significant criminal background, we note that it is well established that a trial court need not articulate the process by which it determines the appropriateness of a given sentence. People v. Wright, 272 Ill. App. 3d 1033, 1045-46 (1995). The record shows that during sentencing, the parties presented arguments in aggravation and mitigation and defendant also addressed the circuit court. The circuit court noted that defendant previously had been convicted of four separate felony offenses and that defendant had twice violated the terms of his probation sentence and twice completed his probation satisfactorily. The court then stated that it considered all factors in aggravation and mitigation in imposing an eight-year prison sentence. Contrary to defendant's contention, there is no evidence to suggest that the circuit court ignored any of defendant's mitigating factors.

In addition, this court has previously explained that the amount of drugs involved should not be determinative of the sentence imposed. See People v. Foules, 258 Ill. App. 3d 645, 661 (1993). In this case, the sentence fell within the parameters prescribed by the legislature and the circuit court considered the appropriate factors in aggravation and mitigation. We therefore find no abuse of discretion.

### E. Credit for Pretrial Custody

The parties agree that defendant is entitled to a $5-per-day credit toward his controlled substance assessment for the time he spent in custody prior to sentencing. At sentencing, the circuit court imposed various fines, fees and costs, including a $2,000 controlled substance

1-05-3495

assessment pursuant to section 411.2 of the Illinois Controlled Substances Act (720 ILCS 570/411.2 (West 2004)).  The court gave defendant credit for 71 days spent in custody prior to sentencing.  In People v. Jones, 223 Ill. 2d 569, 592 (2006), our supreme court held that the controlled substance assessment is a fine subject to reduction credit for presentence incarceration.  Therefore, defendant is entitled to credit for 71 days of presentencing incarceration at $5-per-day for a total of $355 to be credited against his $2,000 controlled substance assessment.  Accordingly, we amend the fines, fees and costs order to reflect a credit of $355 against the $2,000 controlled substance assessment

### III.  CONCLUSION

For the above reasons, we affirm defendant's conviction and sentence, and amend the fines, fees and costs order to reflect a total of $355 to be credited against the $2,000 controlled substance assessment.

Affirmed as modified.

THEIS, J., concurs.

JUSTICE GREIMAN, dissenting:

Reluctantly, I must dissent.

As in Phillips 371 Ill. App. 3d 948 (2007), the majority recognizes the trial court's failure to rule on the motion *in limine* seriously impairs defendant's judgment as to whether or not he should testify and thereby waive his fifth amendment rights.

However, subsequent to their expression of concern regarding defendant's constitutional

-30-

1-05-3495

rights, both hold that the appellate court cannot consider whether the Montgomery conditions can be reviewed unless the defendant elects to testify.

I grant that there is a plethora of opinions validating that conclusion in Phillips, Ballard and, of course, Luce v. United States, 469 U.S. 38, 105 S.Ct. 460, 83 L. Ed. 2d 443 (1984).

We are no longer in lockstep with the United States Constitution. Our constitution provides a similar fifth amendment right in Art. I, §10 which provides "No person shall be compelled in a criminal case to give evidence against himself ***." Ill. Const. 1970, art. I, §10.

As for the authority of the appellate court to hear this issue, Art. I, §12 of that same Illinois Constitution provides that:

"Every person shall find a certain remedy in

the laws for all injuries and wrongs which he receives

to his person, privacy, property or reputation.

He shall obtain justice by law, freely, completely,

and promptly." Ill. Const. 1970, art. I, §12.

Certainly, Art. I, §12 would give our appellate court jurisdiction to hear a matter relating to the impairment of a constitutional right.

Moreover, Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) allows us to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require."

-31-

1-05-3495

Accordingly, under both or either of these provisions, the appellate court may go beyond the Luce decision which required the defendant to testify before the Montgomery conditions could be considered.

This case is particularly easy because there is little doubt as to what the Montgomery consideration would yield. It is hard to imagine that the trial court would not allow the prior drug convictions where defendant is prosecuted for possession of a controlled substance with intent to deliver. I considered authoring a concurring opinion concluding that because the result was so obvious, the judge's failure to rule was harmless error.

I recognize that the supreme court may not agree with my dissent. Accordingly, I encourage our supreme court to exercise its rule-making powers to require the trial courts to rule on defense motions *in limine* regarding the Montgomery test as soon as possible.

In People v. Strain, 194 Ill. 2d 467, 475 (2000), our supreme court recognized "[c]onsistent with constitutional safeguards, this court has the inherent power to make rules governing the practice in the circuit courts, including the regulation of jury trials in criminal cases."

In addition to our courts recognizing that we need not be in lockstep with federal constitutional limitations, the United States Supreme Court has recognized that the interest in uniform laws throughout the country need not interfere with the federal system. In Danforth v. Minnesota, 128 S.Ct. 1029, 1041 (2008), the Supreme Court said:

"This interest in uniformity, however, does not

outweigh the general principle that States are

independent sovereigns with plenary authority to

make and enforce their own laws as long as they do

not infringe on federal constitutional guarantees."

I therefore dissent from the thoughtful majority's opinion and in the event the supreme court declines to accept my dissent, pray that a rule be adopted to resolve this issue.