NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210166-U

NO. 4-21-0166

IN THE APPELLATE COURT

FILED
April 12, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MONICA RUNYON, | ) | No. 19CF1174 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding (1) the evidence was sufficient to
convict defendant of aggravated battery and (2) defendant was not prejudiced by
counsel's failure to request a jury instruction on the definition of "knowledge."

¶ 2    Defendant, Monica Runyon, appeals from her conviction for aggravated battery

(720 ILCS 5/12-3.05(d)(4) (West 2018)). Defendant argues (1) the State failed to prove she

knowingly caused harm to Officer Jerimiah Liebendorfer beyond a reasonable doubt and (2) her

trial counsel was ineffective for failing to request a jury instruction on the definition of

"knowledge." The State argues the evidence was sufficient to prove defendant knowingly caused

bodily harm and defendant cannot establish a claim of ineffective assistance of counsel. We

affirm the trial court's judgment.

¶ 3                                  I. BACKGROUND

¶ 4 In November 2019, the State charged defendant by information with aggravated battery, a Class 2 felony (*id.*). The information alleged defendant, in committing a battery, "knowingly caused bodily harm to Bloomington police officer Liebendorfer, in that she disobeyed verbal commands to exit her vehicle and proceeded to drive over Officer Liebendorfer's foot, knowing Officer Liebendorfer to be a peace officer engaged in the execution of his official duties." The information was later superseded by bill of indictment.

¶ 5 In September 2020, defendant's case proceeded to a jury trial where the following evidence was presented.

¶ 6                          A. Officer Liebendorfer

¶ 7 Officer Liebendorfer testified he was employed as a police officer with the Bloomington Police Department. On November 15, 2019, while serving as a Field Training Officer (FTO), Liebendorfer was called to MG Car Wash in Bloomington with his trainee, Officer Matthew Russell. When he arrived, Officer Stanfield (another FTO) and Officer Stone were already present. Officer Liebendorfer had been called to the scene to assist in the arrest of defendant. (We note the arrest in this instance is not related to the offense charged in this case.) Defendant was in the driver's seat of her parked truck with the engine running.

¶ 8 Officers Liebendorfer and Russell informed defendant she was under arrest. According to Officer Liebendorfer, defendant was "argumentative" and asserted she was not under arrest. Officer Liebendorfer asked defendant to step out of her vehicle "more than three or four" times, but defendant refused. Officer Liebendorfer attempted to open the driver's side door of the truck, which was locked, and defendant rolled up her window. Defendant then placed the truck in reverse, running over Officer Liebendorfer's right foot and ankle and then accelerating away from the scene. Officer Liebendorfer testified this was painful and he was not able to walk

normally afterwards. Defendant drove the truck out of the car wash parking lot, but Officer Liebendorfer did not pursue her in accordance with department safety procedures.

¶ 9 The State then introduced People's Exhibit No. 1, a DVD containing footage from Officer Liebendorfer's body-worn camera depicting his encounter with defendant, which was admitted into evidence with no objection. The State also introduced People's Exhibit Nos. 3 through 7, still frame photographs taken from Officers Liebendorfer, Russell, and Stanfield's body-worn cameras, which were admitted into evidence over defendant's objections. The court then allowed the State to publish People's Exhibit Nos. 1, 3, 4, 5, 6, and 7 to the jury.

¶ 10 Officer Liebendorfer testified he received medical treatment as a result of the injury to his foot, including injections, "different scans, MRIs, bone scans, things of that nature, to try and figure a way to fix the crush injury, the broken bones, and the nerve damage." Officer Liebendorfer was no longer able to run or continue on active duty as a police officer.

¶ 11 B. Officer Stanfield

¶ 12 Officer Brice Stanfield testified he was an officer with the Bloomington Police Department. On November 15, 2019, Officer Stanfield was on his way to defendant's mother's home. He had been called there to facilitate an exchange of items between defendant and her mother when he encountered defendant driving in her truck. While stopped at an intersection, Officer Stanfield asked defendant if they could meet at the nearby car wash to have a conversation, and defendant agreed.

¶ 13 Officer Stanfield followed defendant to the car wash, and Officers Liebendorfer and Russell arrived shortly thereafter. While standing at the rear driver's side of the truck, Officer Stanfield observed Officer Liebendorfer walk up to the driver's side window and inform defendant she was under arrest. Defendant was asked to step outside of the truck "more than

once." The truck then "went into reverse and backed up," after which Officer Stanfield heard Officer Liebendorfer state defendant had just run over his foot. Officer Stanfield then observed defendant drive away.

¶ 14 The State then introduced People's Exhibit No. 2, a DVD containing footage from his body-worn camera depicting his encounter with defendant, which was admitted into evidence with no objection and published to the jury.

¶ 15 C. Officer Russell

¶ 16 Officer Matthew Russell testified he was an officer with the Bloomington Police Department. On November 15, 2019, Officer Liebendorfer was field training Officer Russell when they were called to the car wash. Upon arrival and after being briefed by Officer Stanfield, Officers Russell and Liebendorfer approached defendant's truck. Officer Russell asked defendant to turn off her truck and step outside, and defendant refused. Officer Liebendorfer then took over and repeated the same orders "more than once," to which defendant again refused. Defendant then rolled up her window, backed up her truck, and drove away.

¶ 17 D. Verdict and Posttrial Proceedings

¶ 18 At the conclusion of the State's case-in-chief, defendant moved for a directed verdict, arguing the evidence was insufficient to show she intended to cause bodily harm to Officer Liebendorfer. The trial court denied the motion, and defendant presented no evidence. During arguments, defense counsel repeatedly argued defendant did not intend to run over Officer Liebendorfer's foot and had "no way of knowing where [his] foot was." Defense counsel further argued defendant did not know when she began backing up her truck that Officer Liebendorfer, who had been "away from the vehicle," would step forward, grab the side mirror, and try to stop the vehicle from moving.

¶ 19        Following closing arguments, the court and counsel engaged in a jury instruction conference. Relevant to the issues presented on appeal, defense counsel did not request a jury instruction on the definition of "knowledge," and no such instruction was provided. However, the jury was instructed on the lesser-included offense of reckless conduct. The jury found defendant guilty of aggravated battery.

¶ 20        In October 2020, defendant filed a motion for judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial, which the trial court denied. In November 2020, the trial court sentenced defendant to six years in prison. In December 2020, defendant filed a motion to reconsider her sentence, arguing it was excessive, which the trial court denied after a hearing.

¶ 21        This appeal followed.

¶ 22                              II. ANALYSIS

¶ 23        On appeal, defendant argues the State failed to prove defendant knowingly caused Officer Liebendorfer bodily harm, and therefore no reasonable juror could have found her guilty of aggravated battery beyond a reasonable doubt. Defendant also argues her trial counsel was ineffective for failing to request a jury instruction on the definition of "knowledge." The State argues it provided sufficient evidence to prove defendant knowingly caused bodily harm and defendant cannot establish she was prejudiced by her counsel's failure to request the aforementioned jury instruction. We agree with the State and affirm the trial court's judgment.

¶ 24                        A. Sufficiency of the Evidence

¶ 25        Defendant first argues the State failed to prove she knowingly caused bodily harm to Officer Liebendorfer, and therefore no reasonable juror could have found her guilty of

aggravated battery beyond a reasonable doubt. Defendant further requests we reduce her conviction to the Class A misdemeanor of reckless conduct.

¶ 26                                     1. *Applicable Law*

¶ 27          "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant appeals his conviction, arguing the State failed to satisfy this burden of proof, a reviewing court will not retry the defendant but asks " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* at 278 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 28          In order to prove defendant guilty beyond a reasonable doubt of aggravated battery, the State had to establish three elements: (1) defendant knowingly caused bodily harm to Officer Liebendorfer, (2) defendant knew Officer Liebendorfer to be a peace officer, and (3) defendant knew Officer Liebendorfer was engaged in the execution of his official duties. See 720 ILCS 5/12-3.05(d)(4) (West 2018). Defendant only challenges the first—that she knowingly caused Officer Liebendorfer bodily harm by running over his foot with her truck. Specifically, defendant contends the State presented insufficient evidence to prove that element beyond a reasonable doubt, arguing defendant "could not possibly have known that Officer Liebendorfer would attempt to wrestle her truck to a stop, nor could she see (through the door panel) that he had placed his toes beneath her tire."

¶ 29       Section 4-5(b) of the Criminal Code of 2012 defines "knowledge" as follows: "A person knows, or acts knowingly or with knowledge of *** [t]he result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2018). Where, as here, defendant denies acting knowingly, the State may prove that element through circumstantial evidence. *People v. Phillips*, 392 Ill. App. 3d 243, 259 (2009). Knowledge may be inferred from the defendant's actions and the conduct surrounding it. *People v. Lee*, 2017 IL App (1st) 151652, ¶ 20 (citing *Phillips*, 392 Ill. App. 3d at 259). Additionally, there is an "ordinary presumption that one intends the natural and probable consequences of his actions." *People v. Conley*, 187 Ill. App. 3d 234, 243 (1989).

¶ 30                                    2. *This Case*

¶ 31       Here, we find the State presented sufficient evidence for the jury to conclude defendant was "consciously aware" that it was "practically certain" Officer Liebendorfer would suffer bodily harm as a result of backing up her truck while Officer Liebendorfer was standing in close proximity to the truck's tires.

¶ 32       First, we reject defendant's contention she lacked knowledge that her conduct would cause bodily harm to Officer Liebendorfer on the basis she "could not have possibly seen—through the truck's door—that [Officer Liebendorfer] *** took another step forward and placed his foot behind her tire." We agree with the State that "[e]ven if [defendant] could not see through the truck door, she was unquestionably aware that the officer was standing immediately next to her truck when she decided to drive away, and thus, she was *** 'consciously aware' that it was 'practically certain' he would be hit by some portion of her truck."

¶ 33     We are also unpersuaded by defendant's claim her decision to back up in the direction opposite from where the officers stood supports an inference she did not act knowingly. To back up in the direction opposite from where the officers stood, the front of her truck and her front tires necessarily turned in the direction *towards* them (the officers stood to the left of the truck; defendant backed up to the right). Anyone who has driven for any reasonable period of time would recognize that by turning her wheels to send the back end of the truck to the right, the entire front end, including the wheels would turn to the left, directly into Officer Liebendorfer. A rational trier of fact could have inferred defendant, backing up her truck in that direction while Officer Liebendorfer stood directly next to the front tire, was practically certain to cause him bodily harm. Further, as Officer Liebendorfer testified, and a review of both body-worn camera videos reveals, defendant was looking in the direction of Officer Liebendorfer, who was standing immediately to the left of the driver's side door, as she turned the steering wheel, causing the front end of her truck to swing in his direction. While backing up to get around the squad car parked behind her, she was not moving particularly fast and had time to stop once she saw where the front of her truck was going in relation to the officer. Instead, she continued her turn, running over his foot with her left front tire.

¶ 34     Because we find a rational trier of fact could have found defendant acted knowingly, this court need not address defendant's argument her conviction should be reduced to the Class A misdemeanor offense of reckless conduct—especially where the jury was instructed on that lesser-included offense and nevertheless concluded defendant, in fact, acted knowingly rather than recklessly. See *People v. Schmidt*, 392 Ill. App. 3d 689, 702 (2009) ("[I]nferences as to defendant's mental state are a matter particularly within the province of the jury.") (Internal quotation marks omitted.).

¶ 35                          B. Ineffective Assistance of Counsel

¶ 36           Defendant next argues her trial counsel was ineffective for failing to request a

jury instruction on the definition of "knowledge." The State argues defendant cannot establish a

claim of ineffective assistance of counsel because she has failed to show she was prejudiced. We

agree with the State.

¶ 37                                    1. *Applicable Law*

¶ 38           This court evaluates claims of ineffective assistance of counsel under the familiar

test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* test, a

defendant must show (1) the attorney's performance fell below an objective standard of

reasonableness and (2) the attorney's deficient performance prejudiced defendant in that, but for

counsel's deficient performance, there is a reasonable probability the result of the trial would

have been different. *People v. Jackson*, 2020 IL 124112, ¶ 90. Defendant must satisfy both

prongs of this test, and the failure to establish either is fatal to the claim. *Id.*

¶ 39           "Jury instructions give the jurors the legal principles applicable to the case facts

so that they can reach a correct conclusion according to the law and evidence." *People v. Sperry*,

2020 IL App (2d) 180296, ¶ 13. Generally, trial counsel's decision as to what jury instructions to

tender is considered one of those matters of trial strategy that are immune from ineffective

assistance claims. *People v. Douglas*, 362 Ill. App. 3d 65, 75 (2005). However, trial counsel's

failure to request a specific instruction may constitute ineffective assistance if the instruction was

so critical to the defense that its omission denied the defendant a fair trial. *People v. Falco*, 2014

IL App (1st) 111797, ¶ 16. Even so, "[a] court need not define the term 'knowingly' in an

original set of jury instructions because the term is within the jury's common knowledge

[citation]." *Sperry*, 2020 IL App (2d) 180296, ¶ 15. This court reviews claims of ineffective assistance *de novo*. *People v. Sanders*, 368 Ill. App. 3d 533, 538 (2006).

¶ 40                                              2. *This Case*

¶ 41          Here, defendant cannot establish a claim of ineffective assistance of counsel based on her trial counsel's failure to request an instruction on the definition of "knowingly" because the term was within the common knowledge of the jury and she has failed to show a reasonable probability the outcome of her trial would have been different had the instruction been given.

¶ 42          First, we reject defendant's contention trial counsel's failure to request the aforementioned instruction resulted in the jury not being "properly" instructed. As stated above, typically, an instruction on the definition of "knowingly" is not necessary because it is a term with which jurors are familiar. See *Sperry*, 2020 IL App (2d) 180296, ¶ 15. This was not a situation where the court provided an *erroneous* definition of knowledge. See *People v. Griffin*, 351 Ill. App. 3d 838, 855 (2004) (concluding the defendant was denied a fair trial where the court failed to correctly instruct the jury regarding the mental state of knowledge). Nor was this a situation where the court provided only one definition of knowledge where both definitions were applicable and should have been given. See *People v. Lovelace*, 251 Ill. App. 3d 607, 618-19 (1993). Nor was this a situation where, during deliberations, the jury raised a question as to the meaning of "knowingly" and trial counsel failed to request an instruction on the definition in response. See *Sperry*, 2020 IL App (2d) 180296, ¶ 18; *People v. Lowry*, 354 Ill. App. 3d 760, 767 (2004). Without more, defense counsel's mere failure to request an instruction on the applicable mental state alone is not sufficient to show defendant was prejudiced.

¶ 43          Moreover, even if defendant could establish prejudice, we further find trial counsel's omission did not constitute deficient performance but rather was a matter of trial

strategy. We agree with the State that the common understanding of "knowingly" has a "more unequivocal meaning than the legal definition." Put differently, the layperson's understanding of the word "knowing" is likely more onerous to prove than the legal one—*i.e.*, that defendant was "practically certain" harm would result from her conduct. If the jury found the State had met this more exacting standard, it is not likely it would have acquitted defendant—or convicted her of the lesser-included offense of reckless conduct, on which it was instructed—if the precise legal definition had been provided. Additionally, the jury heard defense counsel repeatedly argue defendant lacked knowledge that backing up her truck would result in bodily harm to Officer Liebendorfer and rejected it. We agree with the State this was a tactical decision by trial counsel and as a matter of trial strategy, it did not render counsel's representation defective. *People v. Peel*, 2018 IL App (4th) 160100, ¶ 39. In fact, it was a reasonable strategy to preclude the jury from learning the broader legal definition of "knowingly."

¶ 44       Because we find defendant has shown neither that trial counsel's performance was deficient nor a reasonable probability she would have been acquitted (or found guilty of reckless conduct) had an instruction on "knowledge" been given, her claim of ineffective assistance of counsel fails. See *Jackson*, 2020 IL 124112, ¶ 90. We therefore affirm the trial court's judgment.

¶ 45                              III. CONCLUSION

¶ 46       For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021), we affirm the trial court's judgment.

¶ 47       Affirmed.